FELIX G. DORRIS, APPELLANT, *v.* B. F. SMITH AND ELLA M. SMITH, RESPONDENTS.

NEGLIGENCE—AFTER ACQUIRED TITLE—ESTOPPEL.—D., having purchased a certain lot, caused the same to be conveyed to his two minor children. Thereafter, being in possession in behalf of his children, he executed a quitclaim deed, in which his wife joined, to the lot in favor of L., by whom it was subsequently conveyed to S. The conveyance by D. was in his own name, which was identical with that of one of the children. Subsequently D., having succeeded to the interest of the child, sought to enforce his title against S.; *Held,* that the execution of the quitclaim deed by D., the wife having joined in the deed and the names of D. and his child being identical, was such an act of negligence on his part as should estop him from asserting his after acquired title against innocent purchasers.

APPEAL from Multnomah County.   The facts are stated in the opinion of the court.

*Seneca Smith and John B. Waldo,* for appellant:

It is claimed on behalf of the respondents that the fact of the identity of the names of the appellant and his son Felix G., was a circumstance which was likely to deceive subsequent purchasers, and that the act of the appellant in executing a deed which might so deceive, was such an act, or such negligence on his part as ought now to estop him from asserting the truth.

In speaking of estoppels *in pais* the supreme court of California say, "where invoked in respect to title it must appear: 1. That the party making the admission, by his declaration or conduct, was apprised of the true state of his own title; 2. That he made the admission with the express intention to deceive or with such careless negligence as to amount to constructive fraud; 3. That the other party was

not only destitute of all convenient and ready means of acquiring such knowledge by the use of ordinary diligence, and that he relied directly upon the admission, and would be injured by allowing it to be disproved." (*Martin* v. *Zellerback*, 38 Cal. 315.)

The same language is used in the case of *Biddle Boggs* v. *Merced Mining Co.*, 14 Cal. 279, and in 43 Cal. 526. The quitclaim deed of the appellant was executed on the ninth day of October, 1857. It does not appear on the face of the deed what interest was sold; there is no assertion or recital that the grantor owned or sold any interest whatever. The pleadings and testimony show that the deed from Day to Geo. P. and Felix G. Dorris was upon record at the time Smith took the mortgage, and was notice to every one that Felix G. owned but an undivided interest, the other moiety belonging to his brother, Geo. P.

In a late case in the supreme court of the United States Mr. Justice Field says: "It is difficult to see where the doctrine of equitable estoppel comes in here. For the application of that doctrine there must generally be some intended deception in the conduct or declaration of the party to be estopped, or such gross negligence on his part as to amount to constructive fraud by which another has been misled to his injury."

In all this class of cases, says Story, the doctrine proceeds upon the ground of constructive fraud or of gross negligence, which in effect implies fraud; and therefore, when the circumstances of the case repel any such inference, although there may be some degree of negligence, yet courts of equity will not grant relief. It has been accordingly laid down by a very learned judge, that the cases on this subject go to this result only—that there must be positive fraud or concealment, or negligence so gross as to amount to constructive fraud. (1 Story's Eq. 391.) To the same purport is the language of the adjudged cases. Thus it is said by the supreme court of Pennsylvania that the primary ground of the doctrine is that it would be a fraud in a party to assert what his previous conduct had denied when on the faith of that denial others have acted.

The element of fraud is essential either in the intention of the party estopped or in the evidence which he attempts to set up. (*Brant* v. *Virginia Coal and Iron Co.* 3 Otto, 335.)

The nature of a quitclaim charges the purchaser with notice. The vendor says in effect to the purchaser: "I make no assertion or pretense of ownership. You take simply what I may have and take the risk absolutely as to my interest being anything." In *Van Rensselaer* v. *Kearny,* 11 How. 322, the court say: "A deed of this character purports to convey, and is understood to convey nothing more than the interest or estate of which the grantor is possessed at the time, and does not operate to pass or bind an estate not then in existence. The bargain between the parties proceeds upon this view, and the consideration is regulated in conformity with it. If otherwise, and the vendee has contracted for a particular estate or for an estate in fee, he must take the precaution to secure himself by the proper covenants of title." And again in *Marshall* v. *Roberts,* 18 Minn. 405, 10 Am. R. 201, it is said: "But besides this, the grantee in a quitclaim deed like that from Roberts to Lamprey, though he may not in fact have known that his grantor had previously conveyed the described premises to another, and though he may not in fact have intended to defraud such prior grantee, is not a purchaser in good faith against such prior grantee, for nothing is attempted to be transferred to him except whatever right, title, etc., the grantor has at the time when the quitclaim deed is executed, so that as in the case of *Hope* v. *Stone,* the very terms of the deed are notice of the existence of the rights which have been conferred upon such prior grantee or any other person."

The doctrine is laid down in a case in Missouri, decided in 1876, which is directly in point. (*Mann* v. *Best,* 62 Mo. 491; *Merrit* v. *Merrit,* Id. 150; *Ridgway* v. *Haliday,* 59 Mo. 444; *May* v. *Leclair,* 11 Wall. 232; *Jackson* v. *Waldron,* 13 Wend. 205.)

Says Chancellor Kent, in *Demming* v. *Smith,* 3 Johns. 345: "If a purchaser wishes to rest his claim on the fact of being an innocent *bona fide* purchaser, he must deny

notice, even though it be not charged, and he must deny it positively, not evasively; he must even deny fully and in the most precise terms every circumstance from which notice could be inferred." And in *Gallatin* v. *Cunningham*, 8 Cow. 382, the court, after having quoted the above from *Demming* v. *Smith*, approvingly, say: " Why must he do thus?" "Because want of notice is an essential part of the purchaser's title, and unless he or those claiming under him aver that he had not notice the title is defective. To omit such an averment is as fatal as if the party had omitted any other fact (as the death of an ancestor, for example) essential to a perfect title."

In *Evarts* v. *Agnes et al.* 4 Wis. 367, in an able opinion the court say: " To entitle a party to the protection which a court of equity extends to a subsequent *bona fide* purchaser, he must make a full statement of all the facts and circumstances of his case, so that the court may be able to do perfect equity between the parties. It is not sufficient to allege that he purchased for a valuable consideration without notice, but the consideration must have been actually paid before notice, and if a part of the consideration only has been paid before notice, he will be protected only *pro tanto.*, hence it is necessary that the actual consideration be stated and the amount actually paid. The mere averment that he is a purchaser for a valuable consideration, and that the consideration is paid, is not sufficient, and no instance it is believed can be found where such a statement in an answer has been held sufficient."

In *Duncan* v. *Johnson et al.* 13 Ark. 190, it is said: "And not only is it necessary to set forth the subsequent title relied upon, but the answer must positively deny all notice whatever, and that not alone before the contract of purchase, but before the payment of the purchase-money and the execution of the deed also." In Story's Eq. Pl., sec. 806, it is said: "The plea must also deny notice of the appellant's title, or claim, previous to the execution of the deed and payment of the consideration." In the case at bar the only allegation of want of notice is: "And he (the respondent, Benj. F. Smith) had not at the time of said purchase any

notice or knowledge concerning the title thereto, except what appeared by the records aforesaid."

There is no allegation as to when the purchase was made, from whom, what consideration was paid, except he alleges he purchased for a "full consideration," or whether the consideration was paid at the time of the purchase and before the notice or not. Besides the words, "except what appeared by the records as aforesaid," is a negative pregnant, and carries with it an admission that he had notice by the record.

*Cattin, Killin & Nicholas*, for respondents:

In July, 1856, more than twenty years before this suit was commenced, F. G. Dorris, the plaintiff, purchased from Lewis Day an equitable title to the lot in controversy, and took the deed in the name of F. G. and Geo. P. Dorris. In October, 1857, F. G. Dorris, the appellant, conveyed said lot by a good and sufficient deed to W. S. and B. R. Ingles, and received a full and adequate consideration therefor; and the deed was recorded. Afterwards the respondents bought the lot and paid a full price for it, and have ever since been in the possession of it, and made large and valuable improvements on it; it was a gully or hollow; they filled it up, made plank streets, built sidewalks, and an expensive house; they, during all the time they were making their improvements, having no knowledge except what was imparted to them by the deed of record. In 1866 respondents got in the legal title from the heirs of D. H. Lownsdale, who held it.

F. G. Dorris, the appellant, now sues to hold the respondents as trustees, for his use; and alleges that when he purchased the lot and took the deed to F. G. and Geo. P. Dorris, he intended the undivided half for an infant son by the name of F. G. Dorris, and not himself; that the son is dead, and he, as sole heir, succeeded to the equity of the son, and is entitled to have the Smiths convey to him. Among other defenses, limitations, want of equity, etc., respondents plead an estoppel by deed and also *in pais*. They claim that Dorris having taken the deed in the name

of F. G. Dorris, with nothing to indicate that it was for the child, and having sold the lot and obtained all it was worth, and having stood by knowing that the Smiths were relying on the face of the record, and having witnessed their great expenditures up to the time of his child's death in 1862, and having ever since failed to notify them of the ambiguity in the record, and having never come near or offered to pay the taxes or street assessments, is estopped now to claim that he committed a fraud and a forgery when he deeded the property away in 1857.

By the Court, PRIM, J.:

Felix G. Dorris, the appellant, who claims to be the equitable owner of lot 7 in block 25, of the city of Portland, brought this suit in the court below to compel respondents to convey to him the legal title of the undivided one half of said lot. The following facts are developed by the pleadings and evidence produced at the trial: On October 8, 1850, Daniel H. Lownsdale, being a settler upon the tract of land embracing the lot in controversy, sold and conveyed said lot by deed, for a valuable consideration, to one Hiram Wilbur, which was duly acknowledged by said Lownsdale, but not witnessed. At the time when this deed was executed Lownsdale had not completed his four years' residence and cultivation upon said land, so as to entitle him to a patent under the act of congress of September 27, 1850, commonly called the donation law, under which he was seeking to acquire the title. Thereafter said Wilbur, for a valuable consideration, conveyed said lot to Lewis Day. On or about July, 1856, appellant bought said lot for a valuable consideration, and procured the same to be conveyed by said Day and wife to George P. and Felix G. Dorris. On October 9, 1857, the appellant sold it to W. S. and B. R. Ingles, for two hundred dollars, and he and his wife conveyed the same to said Ingles by good and sufficient deed, which was duly witnessed, acknowledged and placed upon the records of deeds; that thereafter B. F. Smith, one of the respondents, having paid the full value of said lot and acquired the possession of the same by sundry mesne

conveyances from B. R. and W. S. Ingles, conveyed the same to his daughter, Ella M. Smith. Respondents have remained in possession of said lot ever since, and have made many valuable improvements thereon; that in February, 1866, Lownsdale having died, and his heirs being the owners of the legal title to the tract of land embracing the lot in controversy, the respondent, Ella M. Smith, commenced suit in the circuit court of Multnomah county against said heirs, to compel them to convey to her the legal title of said land, claiming to be the equitable owner thereof through the said sundry mesne conveyances from Lownsdale to herself. The Lownsdale heirs appeared therein, but failed to answer the complaint and permitted a decree to be taken against them, according to the prayer thereof. In pursuance of said decree, they subsequently duly executed a conveyance of the legal title to her.

The complaint of appellant alleges that the said George P. and Felix G. Dorris were his minor children, and that appellant, being in the possession of the said lot for and on behalf of his said minor children, and supposing that he had an interest or right to hold the possession of said land until his said children should become of age, executed the deed of October 9, 1857, together with his wife, to the said W. S. and B. R. Ingles, intending thereby to convey to them his said supposed right to the possession of said lot until his children should arrive at their majority; that on or about the year 1861, Felix G. Dorris, the said minor child of the appellant, and one of the grantees of said Day, died intestate, leaving the appellant his sole heir at law.

The complaint further alleges that all the allegations of the said complaint of Ella M. Smith in her suit against the Lownsdale heirs, so far as they refer to the conveyance by Lownsdale and mesne conveyances to Lewis Day, and from Day to George P. and Felix G. Dorris were true, but that all the allegations of the said complaint as to the deed from Felix G. Dorris were false and a fraud upon the right of the appellant; that Felix G. Dorris, one of the grantees of Day, never did convey his interest in the said land, but owned the same at the time of his death, and that the said quit-

claim deed of the appellant to Benj. R. and William S. Ingles could pass, and was intended and understood to pass, no greater interest than he then had, which was his supposed right to retain the possession until his said children should become of age, and that the appellant, as heir at law of his son, Felix G. Dorris, is now the owner of the equitable title and entitled to a conveyance of the legal title from the respondents.

The answer denies all the material allegations of the complaint except that in the said suit of respondent, Ella M. Smith, against the Lownsdale heirs, in which she obtained the decree compelling them to convey the legal title she in her complaint claimed to deraign her equitable title by and through the said conveyance from Lownsdale to Wilbur and mesne conveyances to Geo. P. and Felix G. Dorris, as alleged in the complaint, but avers that the said Felix G. Dorris was the appellant herein.

The answer, as new matter of defense, sets up that this suit was not commenced within twenty years from the time the cause of suit accrued. Also, that the suit was not commenced within five years from the date of the patent from the United States to Lownsdale to the tract of land embracing the tract in controversy, and that all the matters and things set out in the complaint upon which appellant claims relief occurred prior to the issuing of the patent, and that appellant's claim for both these reasons is barred.

The answer also denies that the deed from the appellant to the Ingles was a quitclaim deed, and makes the said deed a part of the answer marked " A.," and alleges that by it appellant undertook to convey to the Ingles the fee-simple title to the land, as well as any interest he then had, " as any interest he might afterward acquire," and in effect, that appellant ought now to be estopped to claim under any subsequently acquired title.

Alleges that the said deed was duly recorded and that the respondent, B. F. Smith, relying upon the said record, purchased the said lot. There is a further allegation in these words: "And he had not at the time of said purchase any notice or knowledge concerning the title thereto, except

what appeared by the record as aforesaid." There are also allegations that the appellant, knowing that the respondents were relying upon his said deed to Wm. S. and Benj. R. Ingles, stood by and allowed them to make valuable improvements on the land without giving them any notice of his title or claim to the same. The replication denies all the material allegations containing new matter, set up in the answer.

The issues and questions in this suit as summed up in appellant's brief are:

1. Are the respondents estopped to deny that Felix G. and Geo. P. Dorris were, after the deed to them from Day, the equitable owners of the land in controversy?

2. Is the right of the appellant barred by lapse of time?

3. Does the deed of the appellant to Ben. R. and Wm. S. Ingles estop the appellant from asserting the title he afterwards acquired upon the death of his son, Felix G. Dorris?

4. Can the respondents under the pleadings and proofs claim the rights of purchasers for value without notice?

5. Does the fact that the respondents put improvements on the land estop the appellant, he being shown to have known nothing of it until after they put on?

All of these questions are very ably discussed in the brief of appellant; but as the third proposition is the only one which was seriously urged on behalf of respondents, we deem it unnecessary to consider the others. That proposition is as follows: Does the deed of appellant to B. R. and W. S. Ingles estop him from asserting the title he afterwards acquired upon the death of his son, Felix G. Dorris? It is urged on behalf of appellant that the rule is well settled that a mere simple quitclaim of the right, title and interest of the grantor, does not estop him from asserting an after acquired title, which is undoubtedly correct; but that is not the only question presented here. Appellant had two minor children, George P. and Felix G. Dorris, the former being nine years of age and the latter six at the time when the lot in question was conveyed to them. Appellant not only negotiated the trade for the lot but furnished the

consideration from his own means, and caused it to be conveyed by Day and wife to his said minor children.

About one year after this lot had been conveyed to these minor children of appellant, he having conceived the idea that he had some kind of ownership in the property until they should attain their majority, sold the same for its full value to B. R. and W. S. Ingles, and having so sold it, appellant and wife duly conveyed the same to them by good and sufficient deed, which was duly placed upon the record. It is claimed however by appellant that the conditions of the title was fully understood by the Ingles at the time of their purchase, he having explained to them that he only claimed the right to control the property until his said children should attain their majority. But the Ingles having since died, their evidence can not now be obtained upon this question. It looks a little singular that if appellant only claimed the right to hold the land until his minor children should attain their majority, why he should deem it necessary to have his wife join with him in the deed to bar her right of dower, when it was impossible for her to have any such right under his theory.

Thus, when we view the act of the appellant in the light of the evidence in selling his supposed right to the lot and executing the deed in his own name, which was identical with that of his son, we think it was a circumstance which was very likely to deceive subsequent purchasers, and that the act of the appellant in executing a deed which might so deceive, was such an act or such negligence on his part as ought now to estop him from asserting the after-acquired title as against innocent purchasers. The least that could have been required of him by common prudence, under the circumstances, was to have signed his own name as Felix G. Dorris, senior, and that of his son as Felix G. Dorris, junior, so that third parties could have had the means of knowing which one of them had executed the paper.

Under the circumstances as presented in this case we think the circuit court did right in dismissing the suit with costs.

The decree of the court below is affirmed with costs.