FARMERS & MERCHANTS INSURANCE COMPANY V. IVER JENSEN.

FILED MAY 3, 1899. NO. 9877.

1. **Insurance:** TRANSFER OF TITLE: TERMINATION OF CONTRACT. The decisions of points of litigation herein announced in the former opinion, 56 Neb. 284, approved and adhered to.

2. **Statute of Uses.** The statute of uses is not of the law of this state.

REHEARING of case reported in 56 Neb. 284. *Former decision sustained.*

*Clark & Allen,* for defendant in error:

The statute of uses is applicable. Iver Jensen has, therefore, the legal title to the premises, and the insurance contract is in force. (*State Ins. Co. v. Schreck,* 27 Neb. 527; *Thatcher v. Omans,* 3 Pick. [Mass.] 521; *Marshall v. Fisk,* 6 Mass. 24; *Witham v. Brooner,* 63 Ill. 344; *Helfenstine v. Garrard,* 7 O. 276; *Gorham v. Daniels,* 23 Vt. 610; *Hutchins v. Heywood,* 50 N. H. 491; *Sulton v. Aiken,* 62 Ga. 733; *McCoy v. Monte,* 90 Ind. 441; *Roberts v. Moseley,*

51 Mo. 282; *Pugh v. Hayes,* 113 Mo. 431; *Schaffer v. Lavretta,* 57 Ala. 14.)

*Halleck F. Rose* and *Wellington H. England,* for plaintiff in error:

It has been the practice for courts of equity to entertain jurisdiction over all trust estates, without regard to the statute of uses, and without distinction between uses and trusts. The statute of uses is not in force in Nebraska. (*Hoehne v. Breitkreitz,* 5 Neb. 110; *Bear v. Koenigstein,* 16 Neb. 65; *Jones v. Johnson Harvester Co.,* 8 Neb. 446; *Carter v. Gibson,* 29 Neb. 324; *Thomas v. Churchill,* 48 Neb. 266; *Dailey v. Kinsler,* 35 Neb. 835; *Blodgett v. Mc-Murtry,* 39 Neb. 210; *Leader v. Tierney,* 45 Neb. 753; *Hews v. Kenney,* 43 Neb. 815; *Gorham v. Daniels,* 23 Vt. 609.)

HARRISON, C. J.

In an action instituted in the district court of Saunders county the defendant in error recovered a judgment, which on hearing in an error proceeding in this court was reversed. A motion for a rehearing was sustained, not on the questions decided in the former opinion (56 Neb. 284), but to allow argument as to whether the rule of the statute of uses is in force or is of the law of this state. We are satisfied of the correctness of the former decision, and relative to the points therein determined announce at this time our adherence to what was then stated.

The issues presented by the pleadings in the suit were succinctly set forth in the former opinion, and we will reproduce the statement: "Jensen, in his petition, declared upon an ordinary insurance policy. The insurer interposed as a defense to the action that the contract of insurance provided that it should cease to be in force 'in case any change shall take place in the title * * * of the assured in the above-mentioned property' without the consent of the insurer thereto indorsed on the policy; that after the delivery of the policy the insured—his wife

joining therein—conveyed the real estate on which the insured property was situate, by ordinary warranty deed, to one John H. Jensen, and that the latter, afterward by an ordinary warranty deed, conveyed the insured property to the wife of the insured,—all without the knowledge or consent of the insurer. The insured attempted to meet this defense by a reply admitting the conveyance of the title by the insured to John H. Jensen, and by him to the wife of the insured, but alleging that these conveyances were made in pursuance of an agreement between the insured and his wife that the latter should and would hold the title to the property for the use and benefit of the insured, and subject to his direction and control."

The argument now is that the use by reason of the operation of the rule of law embodied in what is termed "the statute of uses" was executed, and the title to the property was in Iver Jensen; that there was no change of title or interest, and the agreement of the policy of insurance was not violated, and the policy remained in force. The statute of uses is in part as follows: "Where any person or persons stand or be seized * * * of and in any * * * lands, tenements, * * * or other hereditaments, to the use, confidence, or trust of any other person or persons, or of any body politic, * * * every such person and persons, and bodies politic, that have or hereafter shall have any such use, confidence, or trust, in fee simple, fee-tail, for term of life, or for years, or otherwise, * * * shall from henceforth stand and be seized, deemed, and adjudged in lawful seisin, estate and possession of and in the same * * * lands, tenements, * * * and hereditaments * * * of and in such like estates as they had or shall have in use, trust, or confidence of or in the same; and that the estate, title, right, and possession that was in such person or persons that were or hereafter shall be seized of any lands, tenements, or hereditaments, to the use, confidence, or trust of any such person or persons, or of any body politic, be

from henceforth clearly deemed ·and adjudged to be in him or them that have, or hereafter shall have, such use, confidence, or trust, after such quality, manner, form, and condition as they had before in·or to the use, confidence, or trust that was in them." (Statutes 27 Henry VIII., ch. 10.)

Counsel for defendant in error gives this exemplification of its effect: "If A, owning real estate, shall convey or will it to B under an agreement between them that, notwithstanding the conveyance, A or some other person or corporation shall have the rents and profits arising from the real estate ' notwithstanding the conveyance made by A under that agreement, he shall still have the title he had before he made the conveyance."

We deem it scarcely within our province, or necessary herein, if we felt equal to the task, to trace and set forth the evolution of transfers, conveyances of property or titles thereto, from the early, primitive, and simple methods employed down through, and following, the intricacies and complexities which came into being or existence when, as time advanced, the desires, designs, and ingenuities of mankind were drawn into and displayed therein. These may be sought in the commentaries and cases on the subject. Statutes were enacted by the proper bodies, one, and probably the main, aim at least of which was apparently to discountenance and discourage or prohibit what were deemed vicious practices in conveyancing, or rather to avoid the results condemned as pernicious, of the conveyances. One of the statutes was that of uses. It has been said that the doctrine of the statute of uses is in force in most of the United States, either by re-enactment or by adoption; and, where it has been expressly declared not of force, a knowledge of its doctrine is necessary to understand and apply the common or statutory forms of conveyances. (1 Perry, Trusts [4th ed.] sec. 299, in a note to which there are statements of the condition of the law on the subject in many of the states of the Union; Walker, American

Law 311.) In 2 Washburn, Real Property, page 438, it is stated: "It would be difficult to define, with any satisfactory degree of accuracy, the extent to which the doctrine of uses has been applied in the systems of conveyance adopted by the several states of this country. In few, if any, of these are there any prescribed forms of deeds which it is necessary to follow in executing conveyances of lands. In a large proportion of them the form is that of bargain and sale, though other forms which clearly indicate the intention of the grantor to pass the estate are held sufficient." It is further said on page 440: "It may be stated generally, that the cases in which resort has been had to the doctrine of uses have been where the parties, in undertaking to convey lands, have failed to follow the form in use in the state, or have undertaken, by a form borrowed from the common law, to create an interest like a freehold *in futuro*, for instance, which could not be done by construing the conveyance as one deriving its validity from the common law, and resort has been had to the doctrine of uses in order to effectuate the intention of the parties." (See, further, Hill, Trustees [Wharton's ed.] 233, note 4; Kent, Commentaries 299-301.) For an article on "The English Doctrine of Uses, as an Element of the American Law of Conveyance," see 5 Am. Law Reg. 641, and a second article in 6 Am. Law Reg. 65. These citations will suffice, at least, to direct to sources from which a full study of the subject may be made. The statute of uses and other parliamentary acts were modifications of the common law. The common law is composed of ancient maxims and customs. (1 Blackstone's Commentaries [Cooley, 3d ed.] *67.)

A question which is here somewhat pertinent is, what has been adopted or is in force in this country,—the common law, or the common law with statutory modifications? It has been stated by the Massachusetts court generally and particularly in reference to the statute of uses: "The statute of uses being in force in England

when our ancestors came here, they brought it with them, as an existing modification of the common law, and it has always been considered a part of our law." (*Marshall v. Fisk*, 6 Mass. 24.) It has been observed "that English statutes passed before the emigration of our ancestors, applicable to our situation, or in amendment or amelioration of the common law, are part and parcel of the common law of this country." (5 Am. Law Reg. 644, citing 2 Salk. [Eng.] 441, Journal of Congress, October 14, 1774, and 5 Pet. [U. S.] 233.) "Conflicting theories as to the origin of law in the North American colonies have been entertained, but whatever be the true one, it is settled that, speaking broadly, the law of England, as it existed at the time of the colonial settlements, is the basis of the law of all the states, with the single exception of Louisiana. (19 Am. & Eng. Ency. Law 1035, 1036, and notes.) In a decision filed March 30, 1897, it was said by the supreme court of Utah: "While the statute of uses never became a part of the English common law, and has never been adopted by the legislature of this state, the rule of law that vests a passive or naked trust in the person having the use is a part of the common law of this state." (*Henderson v. Adams*, 48 Pac. Rep. 398.) The supreme court of Vermont, in an opinion written by Redfield, J., expressed itself on the subject of the statute of uses, holding it not in force, as follows: "But so far as the conveyance of lands in this state is concerned, it seems to me that our statutes are fully adequate to all the ordinary incidents of the subject, and that in those extraordinary occasions, where the statute of uses might answer a good end, it will be safer, and better every way, to have resort to a court of equity than to introduce a portion of the ancient common-law system of conveying real estate, most of the incidents of which having been materially modified, even in England, since the separation of this country from that. It would become necessary immediately to resort to very extensive legislation in order

to render this addition to our present laws even tolerable. This view is certainly confirmed by the history of our jurisprudence upon this subject. Nothing ever existed in the history of this state calling, in the slightest degree, for the use of such a statute, except in those cases where, by some mistake, the parties have failed fully to effect their intention in the prescribed mode. The statute of uses would no doubt aid somewhat this class of cases. But its original purpose and design had not the remotest bearing, or purpose in that direction even. And to adopt a portion of a system of laws which will in its train very likely draw in the whole for the mere purpose of effecting some collateral purpose in a particular cause seems almost absurd. We entertain no doubt that our system of conveyancing, so different from the English, so simple and intelligible to all, and so intended to be, by means of a thorough system of registry, from the very first, was designed to be entire in itself. And although most of its terms, and many of its forms of deeds even, like that of bargain and sale, derived their meaning and operation, to some extent, from the common law and English statutes, and that of uses among others, yet it was no doubt the purpose of the framers of our laws upon conveyancing to have them 'understanded' of the people without the necessity of resorting to the study of the subject in other quarters. Such has been the practical construction of the subject by all, professional or unprofessional, ever since. With rare exceptions, the profession in this state have never supposed any of the common-law modes of conveyancing could be regarded as in force here. The attempt to bar an entail, in this state, by a common recovery, or the rights of a married woman by a fine, would, I think, strike the profession with some surprise." (*Gorham v. Daniels*, 23 Vt. 607.) In the state of Ohio, in 1826, in an opinion in the case of *Thompson v. Gibson*, 2 O. 339, it was stated: "The court were divided in opinion upon the point whether the statute of uses, 27 Henry VIII., ch. 10, had ever been in

force in Ohio. Two judges held that that statute was in force in Ohio from 1795 to January, 1806, for all the purposes that it was in force in Virginia or England. The other two judges held differently." In 1835 the question was again under consideration by the Ohio court, and the statute was decided not in force at any time in the state. It was said in the opinion: "After a political organization, and the administration of justice by courts, within the state of Ohio, for a period of forty-eight years, we find no traces of the authority of the statute of uses at this time as a rule of property, and no distinction is known in practice between uses and trusts. And none seems necessary, since uses in our construction are not attended with those exceptionable privileges which they possessed in England before the stat-. ute, and every quality of trusts is attached to them. Our system of conveyancing, although it has grown out of the English system, does not depend upon the statute of uses, but has taken its form and. derives its authority from our own statutes and local usages. Under these circumstances, the recognition of the power of this statute is not only unnecessary, but would be mischievous, by the introduction of new and complex rules of property." (*Helfenstine v. Garrard*, 7 O. 276.)

We presume we are to ascertain whether the statute of uses is a component part of the law of this state. To appropriate some expressions of a quotation in the article in 5 Am. Law Reg. 641: "The consideration of what is reasonable or unreasonable makes no part of this question. We are inquiring now what the law is, not what it ought to be. Reason may be applied to show the impropriety or expediency of a law, but we must have either statute or precedent to show the existence of it. (Junius, Letter 16.)" It has been enacted by our legislative body: "So much of the common law of England as is applicable and not inconsistent with the constitution of the United States, with the organic law of this territory, or with any law passed or to be passed by the

38

legislature of this territory is adopted and declared to be law within said territory." (Compiled Statutes, ch. 15.) In terms and ordinary import the foregoing appears to be of the "common law of England" and not of the statutory laws or of the former as modified by the latter. This state has statutory rules for conveyancing which include some directions for construction of instruments. See chapters 32 and 73, Compiled Statutes, section 50 of the latter of which is as follows: "Every conveyance of real estate shall pass all the interest of the grantor therein, unless a contrary intent can be reasonably inferred from the terms used." This statutory system of conveyancing would seem sufficiently complete within and of itself and to have been intended so, and that this is true seems to have been concluded by the acts and opinions of the people, the practitioners, and the courts. We know of no instance of an authorizedly expressed or recorded opinion to the contrary. It is true that no specific form of conveyance is prescribed, and doubtless many or any sufficient may be employed, and it is also safe to say that in construing any form which may be adopted by any parties any and all rules generally applicable to like forms of conveyancing in the ascertainment of the intent may be pertinent, regardless of the doctrines in which the rules may have originated, but the statute of uses, in its direct action and execution of a use and absolute establishment of the results of conveyances, is not of the law of our system of conveyancing as a statute or law. It has not been and is not recognized. In the case at bar its effect, if allowed to prevail, would be to declare that the parties by their conveyances had accomplished just the opposite of what they therein asserted in unequivocal terms that they intended or did. If we thought that such was the law, it would be our duty so to say, but believing differently we must so state. The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.