CITY OF LINCOLN, NEB., et al. v. RICKETTS.

RICKETTS v. CITY OF LINCOLN, NEB., et al.

Nos. 10213, 10219.

Circuit Court of Appeals, Eighth Circuit. July 9, 1936.

Don W. Stewart, of Lincoln, Neb. (A. A. Whitworth, Charles B. Paine, and Stewart, Stewart & Whitworth, all of Lincoln, Neb., on the brief), for appellants.

R. A. Boehmer, of Lincoln, Neb. (Perry W. Morton and A. W. Field, both of Lincoln, Neb., on the brief), for appellee.

Before GARDNER, SANBORN, and WOODROUGH, Circuit Judges.

GARDNER, Circuit Judge.

This case is before us for the second time. There was involved on the first appeal the right of the city of Lincoln, Neb., to a priority in the payment of its claim of $45,000 against the Lincoln Trust Company, bankrupt. This right of priority was urged on the grounds (1) that the certificates of deposit issued by the Lincoln Trust Company created a trust relation between the city and the trust company; (2) that the trust company was a trustee ex maleficio; and (3) that the city was entitled to priority in payment by ·reason of its right of sovereignty. We held. that no trust relation existed between the city and the· trust company; that the city could not sustain the right to prioriy of payment based upon its alleged prerogative right of sovereignty because the trust company was in bankruptcy and that a municipality was not within the purview of section 64b of the Bankruptcy Act, as amended May 27, 1926, 11 U.S.C.A. § 104(b)   (C.C.A.) 77 F. (2d) 425. The Supreme Court granted certiorari, limited to the application of section 64b, and, expressing the view that section 64b included a municipal corporation, reversed the judgment of this court, and remanded the cause, with directions to determine the single ' issue as to "whether the City of Lincoln is entitled to priority under the law of Nebraska." City of Lincoln v. Ricketts, 297 U.S. 373, 56 S.Ct. 507, 509, 80 L.Ed. 724.

The facts material to the appeal are not in dispute. The city of Lincoln, Neb., a municipal corporation, loaned to or deposited with the Lincoln Trust Company, then engaged in a general trust company busi-

ness under the laws of Nebraska, the sum of $45,000. The trust company, upon receiving such money, delivered to the city certain certificates, which, among other things, provided for the payment of interest. The trust company paid this interest up to March 26, 1932. On June 14, 1932, the city demanded the principal and accrued interest, which demand was not complied with, and on July 9, 1932, the trust company was adjudged a bankrupt. The city first filed a general claim against the bankrupt, which was duly allowed. Subsequently, on leave granted, it filed an amended claim, asserting the right of priority of payment over general creditors on the ground that the funds, deposits, securities, and assets of the trust company "are impressed with a trust in favor of the claimant."

The appellant Standard Accident Insurance Company was surety on a bond executed by the trust company to the city, and, pursuant to the terms of its obligation, it paid the city the amount of its claim against the trust company, whereupon the claim was assigned to the insurance company.

■ No preference or priority for the claims of the state against insolvent banks or trust companies is provided for by statute, except as to claims for taxes. Whether, under the laws of Nebraska, the city of Lincoln is entitled to priority of payment from the assets of the bankrupt by right of sovereignty is a matter of local law. So far as we have been able to discover, the Supreme Court of Nebraska has not directly passed upon this question. If and when it does so, its pronouncement will be controlling upon this court.

Section 49-101, C.S.Nebraska, 1929, provides: "So much of the common law of England as is applicable and not inconsistent with the constitution of the United States, with the organic law of this state, or with any law passed or to be passed by the legislature of this state, is adopted and declared to be law within the State of Nebraska."

To what extent and in what sense the common law of England is in force or applicable in Nebraska was considered in Williams v. Miles, 68 Neb. 463, 94 N.W. 705, 708, 96 N.W. 151, 62 L.R.A. 383, 110 Am.St.Rep. 431, 4 Ann.Cas. 306, where it is said: "The term 'common law of England,' as used in the statute, refers to that general system of law which prevails in England, and in most of the United States by derivation from England, as distin-

guished from the Roman or civil law system, which was in force in this territory prior to the Louisiana purchase. Hence the statute does not require adherence to the decisions of the English common-law courts prior to the Revolution, in case this court considers subsequent decisions, either in England or America, better expositions of the general principles of that system."

In Brooks et al. v. Kimball County, 127 Neb. 645, 256 N.W. 501, 504, the court declared that: "This state adopted the common law of England and not the statutory law of England."

In Moran v. Moran, 107 Neb. 386, 163 N.W. 315, 1071, the court held that notwithstanding the above-quoted statute, adopting in a qualified sense the common law of England, the rule in Shelley's Case was not in force in Nebraska.

In Farmers' & Merchants' Ins. Co. v. Jensen, 58 Neb. 522, 78 N.W. 1054, 44 L.R.A. 861, the court held that the statute of uses was not in force in Nebraska.

In Wattles v. South Omaha Ice & Coal Co., 50 Neb. 251, 69 N.W. 785, 36 L.R.A. 424, 61 Am.St.Rep. 554, the court held that the English common-law construction of a lease covenant to return the property in the same condition as when received, natural decay, wear, and tear excepted, which makes the tenant liable to rebuild buildings destroyed by fire, was not in force in Nebraska.

In Bloomfield State Bank v. Miller, 55 Neb. 243, 75 N.W. 569, 570, 44 L.R.A. 387, 70 Am.St.Rep. 381, it was held that a mortgage by the deposit of title deeds without writing was not effective in Nebraska; the court, among other things, saying: "The common law is not with us an estate by inheritance, but one by purchase. It is here in force by virtue of statute, which provides: 'So much of the common law of England as is applicable and not inconsistent with the constitution of the United States, with the organic law of this territory, or with any law passed or to be passed by the legislature of this territory, is adopted and declared to be law within said territory.' Comp.St. c. 15, § 1. No one would assert that the phrase 'common law' was there used in contradistinction to the rules of equity. It undoubtedly includes the law derived from the English court of chancery. On the other hand, it was not the whole body of the English law which was adopted, but only so much thereof as is applicable (to the nature of our institu-

tions), and is not inconsistent with the constitutions or statutes, past or future."

It will be noted that the Supreme Court of Nebraska, in construing the statute of that state adopting the common law of England, has declared, first, that it was only the unwritten and not the statutory law that was adopted, and, second, that this common law is in force only so far as applicable to conditions and surroundings and not inconsistent with the Constitution of the United States, the Constitution of Nebraska, or legislative enactments, passed or to be passed. The rules and principles of the common law which were of local application or which, although of general application, are not suited to the conditions and surroundings in Nebraska, or which are inconsistent with the Constitution or statutes of that state, are not in force. Farmers' & Merchants' Ins. Co. v. Jensen, 58 Neb. 522, 78 N.W. 1054, 44 L.R.A. 861; Bloomfield State Bank v. Miller, 55 Neb. 243, 75 N.W. 569, 44 L.R.A. 387, 70 Am.St.Rep. 381; Kerner v. McDonald, 60 Neb. 663, 84 N.W. 92, 83 Am.St.Rep. 550.

Whether or not the states have succeeded to the prerogative right of the British Crown to priority in payment out of the assets of an insolvent debtor as against all persons not having antecedent liens, is a question upon which there is an irreconcilable conflict of authority. It is urged that this court should sustain this prerogative right, following its decision in City and County of Denver v. Stenger, 295 F. 809. But, as above noted, this is a question of local law, and since the decision of this court in City and County of Denver v. Stenger, supra, sustaining the prerogative right in the state of Colorado, the Supreme Court of that state has directly held that this prerogative right does not exist in that state. United States F. & G. Co. v. McFerson, 78 Colo. 338, 241 P. 728; Board of County Commissioners v. McFerson, 90 Colo. 408, 9 P.(2d) 614, 615.

In Board of County Commissioners v. McFerson, supra, in referring to our decision in the Stenger Case, it is said: "Counsel for the board rely upon the case of City and County of Denver v. Stenger (C.C.A.) 295 F. 809, wherein it is held that a municipality is entitled to a priority on the theory that the debt is due the sovereign. But as later said in Ætna Casualty & Surety Co. v. Bramwell (D.C.) 12 F.(2d) 307, 310, of City and County of Denver v. Stenger, 'This case is now shorn of ap-plication, by reason of the fact that Colorado has, since the decision of that case, denied the common-law prerogative right to the state. United States Fidelity & Guaranty Co. v. McFerson (78 Colo. 338) 241 P. 728.'"

The author of the article on Banks, 3 R.C.L. at § 273, says, concerning this controverted question: "But, as applied to insolvent banks in which deposits of public money have been properly made, the better rule seems to be that in the absence of statute or a showing of facts sufficient to create a trust, a claim for public money has no preference over the claims of the general creditors of the bank, but stands on the same footing with them."

■ Under the common law of England, it cannot be said that there existed a preferential right in the distribution of the assets of an insolvent bank, because England's banking system was not in existence until after 1607. As said by the Supreme Court of Indiana in Fidelity & Deposit Company v. Brucker, 205 Ind. 273, 183 N. E. 668, 670: "No specific rule of the common law (nor any statute) existed in 1607 by which the sovereign could claim a priority in the case of a bank deposit; the bank of England, the first institution through which the government did a banking business, was not founded until 1694. It does not follow from the general rule of the common law, giving a preference to the sovereign in governmental matters, that such a preference should exist where the state deposits money in a bank to earn interest, pursuant to a contract."

■ The right to assert this prerogative right of preference is further limited and restricted by the circumstances of this case. (1) The transaction out of which the liability to the city arose was not governmental in character, but was based upon private contract. It is generally held in such a transaction that the same rules of law apply to the state as to private persons under like circumstances. Davis v. Gray, 16 Wall. 203, 21 L.Ed. 447; Illinois Trust & Sav. Bank v. Arkansas City (C.C.A.8) 76 F. 271, 34 L.R.A. 518; Vilas v. Manila, 220 U.S. 345, 31 S.Ct. 416, 55 L.Ed. 491; Fulton v. First Volunteer Co., 204 Wis. 355, 236 N.W. 120; State v. Board of Commissioners, 53 S.D. 609, 222 N.W. 583.

■ (2) The city did not rely upon its prerogative right of preference, but secured the repayment of its debt by requir-

ing the debtor to furnish a bond for its repayment. So far as the city is concerned, it has no occasion to assert this prerogative right of preference. The reason for the priority rule is that it is necessary to protect public revenues. One of the oldest maxims of the common law was that where the reason of a rule ceased, the rule also ceased. This maxim of the English common law was adopted by Nebraska. Under that maxim, no law can survive the reasons on which it is founded. The common law is not fixed and immutable like the statute law, but flexible, so that it is always adapted to meet new or unexpected conditions. United States F. & G. Co. v. McFerson, 78 Colo. 338, 241 P. 728, 729; Board of County Com'rs v. McFerson, 90 Colo. 408, 9 P.(2d) 614; In re Holland Banking Co., 313 Mo. 307, 281 S.W. 702; Kerner v. McDonald, 60 Neb. 663, 84 N.W. 92, 83 Am.St.Rep. 550.

In applying this rule of common law, the Supreme Court of Colorado, in United States F. & G. Co. v. McFerson, supra, said: "The principle that, where the reason for a rule fails, the rule fails, seems especially applicable here. The sovereign's preference is an exception to the general law. The doctrine is a harsh one, and from time immemorial has rested solely upon public necessity. Moreover, if Finch is correct, as quoted by Blackstone, that it is 'a maxim that the prerogative is that law in case of the king which is law in no case of the subject,' the prerogative could never be the subject of subrogation. Here the security was ample; the state has been paid by one employed for the very purpose of assuming that risk and performing that service. There is no necessity and hence no preference. If the surety were also insolvent, the necessity would appear."

In the instant case, the debt due the city was not only amply secured, but was in fact fully paid before the trial of the issues in this case.

Important as it may be to protect public money, it must be remembered that individuals as well as municipalities are asserting rights in the assets of the insolvent trust company. As said by Chief Justice Shaw in Commonwealth v. President, etc., of Phœnix Bank, 11 Metc.(Mass.) 129, involving a claim of preference on the part of the United States, "Claims to a preference and payment in full are not favored by any considerations of equity. The general rule is, that when several creditors are

entitled to payment from a fund insufficient to satisfy the whole, they shall share in proportion. This rule of equity may be controlled by a provision of positive law. In such case all the creditors will not be equally entitled to be paid in full, and equity must yield to the law. But in order to establish such a preference, it must be made plainly to appear that the case is within the rule of law that secures such preference."

The rule invoked, giving the state a preference, is based largely upon grounds of expediency and public necessity, and, as said in United States F. & G. Co. v. McFerson, supra, "There is no necessity and hence no preference."

In Berthold-Jennings Lumber Co. v. St. Louis, etc., Ry. Co. (C.C.A.8) 80 F.(2d) 32, 39, in denying claimant's asserted right to priority in payment of its debts, it is said:

"It is a general rule that all unsecured creditors stand on the same basis, and as to them equality is equity. To warrant the enforcement of the claim of one creditor over those of another, there must be something in the intrinsic nature of such claim conferring an equity superior to that of the creditors over whom he claims a preference. * * *

"Appellants finally urge that their claims are 'inherently preferred.' But preferences must be based upon recognized principles of law and equity. We are here dealing with an insolvent estate. There are other creditors with unsecured claims, and if preference be granted to appellants, the property of other creditors will be taken from them and given to appellants."

The Supreme Court of Kentucky in Smith v. Arnold, 165 Ky. 214, 176 S.W. 983, 984, in discussing a right of preference where the deposit of public funds was secured by a surety bond, said: "It was to protect the funds so deposited that the bond was required of the bank; and we will not countenance an effort to relieve this bond by an attempt to obtain a priority in the disbursements of the bank's assets, to the prejudice of the other depositors."

See, also, Cook County Nat. Bank v. United States, 107 U.S. 445, 2 S.Ct. 561, 27 L.Ed. 537.

■ (3) These public funds, we may properly assume, instead of being deposited with or loaned to the Lincoln Trust Company,

might have been deposited in a national bank. If the state or its municipality could properly assert a prerogative priority as to its funds in insolvent state banks or trust companies, it could not sustain such priority in the assets of an insolvent national bank. Davis v. Elmira Sav. Bank, 161 U.S. 275, 16 S.Ct. 502, 40 L.Ed. 700. This would result in discrimination against state banks and trust companies to the advantage of national banks. The right to assert such priority as to assets in state banks, and the lack of such right in the assets of National banks, would clearly make national banks more desirable depositories for private individuals who could not assert priority rights. It would seem clearly to be contrary to the policy of the state of Nebraska to permit discrimination against state banks in favor of national banks. To overcome such discrimination, it should be held that neither the state nor its municipalities has a right of priority as to deposits in state institutions. In re Holland Banking Co., 313 Mo. 307, 281 S.W. 702; Shaw v. United States F. & G. Co. (Tex.Com.App.) 48 S.W.(2d) 974, 83 A.L.R. 1113.

The Supreme Court of Nebraska, in construing a statute for the guaranty of bank deposits, has held that where a city took from a state bank collateral security for its deposits and received the proceeds of the security after insolvency of the bank, and then presented a claim for excess of deposits over the proceeds, that the city was in the class of depositors "otherwise secured," and not entitled to share the assets of the bank on an equality with depositors in the class not otherwise secured. State v. First State Bank of Alliance, 122 Neb. 109, 239 N.W. 646; State v. First State Bank of Alliance, 122 Neb. 502, 240 N.W. 747, 79 A.L.R. 576; State v. South Omaha State Bank, 128 Neb. 733, 260 N.W. 278; State v. Farmers' & Merchants' Bank, 126 Neb. 245, 252 N.W. 917; State v. Farmers' State Bank, 126 Neb. 468, 253 N.W. 652.

Manifestly, if the Nebraska rule for the distribution of the funds of an insolvent bank be applied to the instant case, the claim of priority asserted by the city of Lincoln could not be sustained, but its claim would in fact be subsequent to the claims of general creditors because its claim was secured.

(4) Consideration of cognate legislation relative to the liquidation and distribution of the assets of insolvents convinces that, except as to taxes, the Legislature of Nebraska has consistently refused to sanction any rights of priority to claims of the state. The prerogative right of priority urged in this case is inconsistent with the Nebraska legislation, and hence is not within the common law of that state.

In sections 6-101 to 6-145 of the Nebraska Compiled Statutes of 1929, relating to assignments for the benefit of creditors, there is no provision for priority to the state. Provision is made for liquidation of insolvent building and loan associations (sections 8-319 and 8-324, C.S.1929), and insolvent insurance companies (sections 44-202 to 44-204, C.S.1929), with no mention of a priority to the state. In the liquidation of estates of decedents, section 30-615, C.S.1929, provides:

"If the assets which the executor or administrator may have received and which can be appropriated to the payment of debts shall not be sufficient, he shall, after paying the necessary expenses of administration, pay the debts against the estate in the following order:

"First. The necessary funeral expenses, which shall be a preferred claim only to an amount not exceeding Two Hundred and Fifty Dollars ($250.00) for casket and services of undertaker.

"Second. The expenses of the last sickness.

"Third. Debts having a preference by the Laws of the United States.

"Fourth. Debts due to other creditors."

Section 8-1,102, C.S.1929, fixes the priorities in the distribution of the assets of an insolvent state bank, and provides as follows: "The claims of depositors, for deposits, not otherwise secured, and claims of holders of exchange, shall have priority over all other claims except federal, state, county, and municipal taxes, and subject to such taxes, shall at the time of the closing of a bank be a first lien on all the assets of the banking corporation."

Manifestly, if the funds of the city had been deposited in a state bank, no sovereign right of priority could have been asserted, first, because the claim was a secured one, and, second, because the above-quoted statute specifically fixes the order of priority.

In State of Alabama v. Martin (C.C.A.5) 256 F. 313, that court considered a claim of priority asserted against the as-

sets of a bankrupt corporation. As in Nebraska, the common law of England, so far as not inconsistent with the Constitution, laws, and institutions of Alabama, prevails in that state. In the course of the opinion by Judge Walker, it is said: "It is claimed that the state has the priority which the common law accorded to debts owing to the sovereign. There are Alabama statutes, the enactment and existence of which seem to us to be inconsistent with the hypothesis that the priority claimed exists under the law of that state."

After making reference to statutes providing for the settlement of estates of decedents, for the administration of trusts, including general assignment for the benefit of creditors, it is said: "A result of the statutes mentioned is that a demand in favor of the state, unless it is one for taxes, is not entitled to priority, when asserted against the estate of a deceased debtor, or against the property of one who has made a general assignment for the benefit of his creditors. It is not to be supposed that the Legislature intended to give to a debtor's death, or to his creation of an express trust for the payment or security of his debts, the effect of depriving a creditor of a priority which he has so long as the debtor lives and does not himself devote his property to the payment of his debts. The fact that the statutes which deal with the distribution of property among the creditors of its insolvent owner provide for the state having a priority only for taxes furnishes some basis for an inference that the lawmakers recognized that debts owing to the state are not entitled to priority except when expressly provided for."

(5) No judicial opinion of the Supreme Court of Nebraska recognizes the priority asserted. The only opinion of the Supreme Court of Nebraska cited by either party, directly bearing on the subject, is State ex rel. Spillman v. Hadley Company, No. 27,-751, Neb.Sup.Ct., filed June 16, 1931.[1] The opinion, however, is the opinion of a commissioner, and by specific provision of a Nebraska statute (Comp.St.Neb.1929, §§ 27-218, 27-224) such an opinion "shall establish no precedent and be authority only in that particular case." In that case, a school district sought priority of payment on a contract debt of $1,767.26, owing to it from the receiver of a state bank, and it contended for prerogative priority along with a claim for preference under the trust fund doctrine. The trial court denied any right of priority on either ground. On appeal the court referred the case to the Supreme Court Commission. The Commission filed a report, including an opinion of one of its members, denying the prerogative right of priority in the school district, but adjudging a preference under the trust fund doctrine to the extent of $582.96. The Supreme Court entered its judgment, based upon this opinion; two of the judges dissenting. The opinion is, of course, not a controlling precedent. It is, however, the opinion of a Nebraska lawyer which was concurred in by five of the seven judges, and we may assume that it reflected the views of at least five members of the court. The court has substantially the same membership as when this opinion was filed and acted upon.

As we have before said, this question is peculiarly one of local law. In Blue Valley Creamery Co. v. Consolidated Products Co. (C.C.A.8) 81 F.(2d) 182, 186, we were confronted with a somewhat similar situation. The question then before us involved the construction of the Missouri statute of frauds (Mo.St.Ann. § 2967, p. 1835). The Supreme Court of Missouri had not passed upon the particular question, but the Court of Appeals of that state, an intermediate court, had passed upon it. The decisions of the Missouri Courts of Appeal are not binding upon us in the construction of a state statute. Confronted with this situation, we there said: "Hawks v. Hamill, 288 U.S. 52, 53 S.Ct. 240, 242, 77 L.Ed. 810, teaches that, 'A wise comity has decreed that deference shall at times be owing, though there may be lacking, in the circumstances, a strict duty of obedience,' and that considered dictum, and not comment merely obiter, 'has capacity, though it be less than a decision, to tilt the balanced mind toward submission and agreement.' It is also there said: 'The stranger from afar, unacquainted with the local ways, permits himself to be guided by the best evidence available, the directions or the counsel of those who dwell upon the spot.'"

Referring to such decisions by the Commission, the Supreme Court of Nebraska, in Burkamp v. Roberts Sanitary Dairy, 117 Neb. 60, 219 N.W. 805, 807, said that the Commission "is composed of able men, learned in the law."

---

[1] Not reported.

And further: "Such decisions are entitled to great respect and generally announce correct principles of law."

In the circumstances here confronting us, we should not say that there is no significance in the fact that the trial court in the above-cited case denied the school district's claim of sovereign prerogative right to priority. The Supreme Court of Nebraska has, with one exception, the same membership that it had when it approved the findings and recommendations of the Commission in the school district case, and, based thereon, adjudged that the school district did not have prerogative priority for its debt. As said by Mr. Justice Cardozo in Hawks v. Hamill, supra: "A wise comity has decreed that deference shall at times be owing, though there may be lacking, in the circumstances, a strict duty of obedience. * * * It has capacity, though it be less than a decision, to tilt the balanced mind toward submission and agreement."

We conclude that the city of Lincoln is not entitled to priority of payment from the assets of the bankrupt, under the laws of Nebraska. The judgment appealed from is therefore modified to the extent of disallowing any part of the city's claim as a prior claim, and, as so modified, the judgment appealed from is affirmed.