STATE EX REL. WALTER R. JOHNSON, APPELLANT, V.
TAUTGES, RERAT & WELCH ET AL., APPELLEES.

20 N. W. 2d 232

FILED OCTOBER 5, 1945. No. 31953.

*Walter R. Johnson, Attorney General, H. T. White, H. Emerson Kokjer,* and *John S. Samson,* for appellant.

*M. L. Donovan,* for appellees.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, CHAPPELL, and WENKE, JJ.

MESSMORE, J.

This is an appeal from the ruling of the district court on two special appearances, objecting to the jurisdiction of the court. The respondents prevailed when the special appearances were sustained. From this ruling, the relator appeals.

On May 8, 1944, the relator filed his petition and named therein, among others, Tauges, (correct name Tautges) Rerat & Welch, a copartnership. The petition alleged that the respondents, William A. Tautges, Eugene A. Rerat and Walter J. Welch are each practicing attorneys engaged in the practice of law, maintaining their offices in Minneapolis, Minnesota, under and by the partnership name of Tautges, Rerat & Welch, and in their individual persons and as such copartners are made respondents; that these three defendants engaged other defendants (which are named in the petition but are not parties to this suit) to solicit personal injury suits against railroad and transportation companies within this state, for the purpose of bringing suits against such companies without the state, in violation of sections 28-739 and 28-740, R. S. 1943; that the practice indulged in by the respondents is in violation of the laws of this state, detrimental to the general public welfare and morale of the people of this state, and tends to bring the administration of justice in this state into ridicule and disrepute; and prayed the issuance of an injunction.

On May 8, 1944, summons was issued and return made on the same day, showing service on Tautges, Rerat & Welch as a copartnership, by delivering to William A. Tautges,

one of the copartners who was in charge of such at the usual place of doing business of such copartnership in Douglas county, Nebraska, personally, in said county, a due and certified copy of the writ with all endorsements thereon. On the same day the writ discloses that a summons was served personally on William A. Tautges, by delivering a true and certified copy with all endorsements thereon, to him in Douglas county.

On June 12, 1944, special appearance of respondent designated as Tautges, Rerat & Welch, a copartnership, was filed, objecting to the jurisdiction of the court over the person of defendant, for the reason that the relator undertook to secure service of process upon this defendant in Douglas county, Nebraska, by delivering summons to William A. Tautges, as one of the copartners who was in charge of the office at the usual place of doing business of such copartnership in Douglas county, Nebraska, personally, in said county, whereas in truth and in fact, the said defendant did not at said time nor at any other time, maintain an office in Douglas county, Nebraska; that at the time of attempting service of summons upon said defendant by delivering a copy of summons to William A. Tautges, he was a resident and citizen of Minnesota and had come into the jurisdiction of the Nebraska court as an attorney at law for the sole and only purpose of representing a litigant in the trial of a lawsuit, and at the time of delivery of copy of summons to him, he was in the courtroom where the lawsuit was being tried and was actually engaged in the trial; that the defendant, as a copartnership, is immune from service of process.

On the same day a special appearance was filed in behalf of the defendant William A. Tautges, setting forth that the relator undertook to secure service of process upon such defendant individually, by causing to be delivered to him in the courtroom of Honorable James M. Fitzgerald, one of the judges of the district court, while the respondent was engaged in representing a litigant in the trial of a lawsuit, and at the time of the attempted service of summons upon the respondent he was a resident and citizen of Minnesota

and had come into the jurisdiction of the Nebraska court as an attorney, for the sole and only purpose as heretofore stated. For the reason given, it was claimed that the respondent was immune from service of process at the time.

An affidavit of the respondent, Tautges, discloses that he is a citizen of Minnesota, resident of the city of Minneapolis, and has maintained a law office in that place since March 15, 1907, and since January 1, 1944, has occupied a law office at 800 Foshay Tower in Minneapolis; that on May 8, 1944, there was pending in the district court for the fourth judicial district of Douglas county, Nebraska, an action in which he represented the plaintiff as an attorney; that he left Minneapolis, Minnesota, for Omaha, May 5, 1944, arriving at the latter city May 6, 1944, solely in his capacity as attorney for the plaintiff in a lawsuit to be tried in the district court for Douglas county at Omaha, and for the purpose of additional preparation for trial of the case. The trial concluded on May 15, 1944, and he departed from Omaha on the first available passenger train, May 16, 1944; that on May 8, 1944, at approximately 4:30 o'clock p. m., while he was in courtroom No. 3 in Douglas county, and after the adjournment of the court, and while still engaged in consultation with the plaintiff and his co-counsel, he was served with the summonses as heretofore set out. The affidavit further recites that Tautges, Rerat & Welch are not a copartnership, but there exists an office association under such name, and that no office was ever maintained as a place of business within the state of Nebraska.

A supplemental affidavit discloses that William A. Tautges was admitted and authorized to practice in the district court in Nebraska for the purpose of trial and proceedings in the case then before the court, in which he was counsel.

The relator contends that the trial court erred in sustaining the special appearance of William A. Tautges, and in holding that an attorney from another state, while in the state of Nebraska for the purpose of trying a case pending in this state, was immune and exempt from service of civil process. This question has not been previously determined by this court.

In approaching a solution of the question thus presented, our attention is directed by the respondent to section 49-101, R. S. 1943, as follows: "So much of the common law of England as is applicable and not inconsistent with the Constitution of the United States, with the organic law of this state, or with any law passed or to be passed by the Legislature of this state, is adopted and declared to be law within the State of Nebraska."

In determining the applicability of the foregoing statute to rules of common law and as they may be applied in this state, this court in *Kerner v. McDonald,* 60 Neb. 663, 84 N. W. 92, 83 Am. St. Rep. 550, said: "Many principles of law have changed with the passing of time, through the gradual change of thought on the part of society and the flux and change of social organization; many others have ceased because the reason which called them into existence has ceased, \* \* \* ."

In the *City of Lincoln v. Ricketts,* 84 F. 2d 795, the court held: "Common law is not fixed and immutable like statute law, but is flexible and adapted to meet new or unexpected conditions." In the body of the opinion it is said: "It will be noted that the Supreme Court of Nebraska, in construing the statute of that state adopting the common law of England, has declared \* \* \* that this common law is in force only so far as applicable to conditions and surroundings and not inconsistent with the Constitution of the United States, the Constitution of Nebraska, or legislative enactments, passed or to be passed." See *Farmers & Merchants Ins. Co. v. Jensen,* 58 Neb. 522, 78 N. W. 1054, 44 L. R. A. 861; *Bloomfield State Bank v. Miller,* 55 Neb. 243, 75 N. W. 569, 44 L. R. A. 387, 70 Am. St. Rep. 381.

The foregoing are in keeping with *Funk v. United States,* 290 U. S. 371, 54 S. Ct. 212, 93 A. L. R. 1136: "The common law is not immutable, but flexible, and by its own principles adapts itself to varying conditions." See 11 Am. Jur., sec. 2, p. 153.

The courts have the power to modify the common law, adopting such of its principles as are applicable and reject-

ing such others as are inapplicable. 11 Am. Jur. 162, sec. 7, note 18, and cases cited therein. See, also, Annotations, 56 A. L. R. 277, 86 A. L. R. 475.

It is apparent that under the foregoing authorities, that the adoption of the common law, as provided for by section 49-101, R. S. 1943, *supra*, does not imply that all of the common-law rules are strictly in force in this state, but are subject to the conditions and modifications as reflected in the authorities cited.

In furtherance of a reason for the soundness of such authorities: "The common law by its own principles adapted itself to varying conditions and modified its own rules so as to serve the ends of justice as prompted by a course of reasoning which was guided by these generally accepted truths. One of its oldest maxims was that where the reason of a rule ceased, the rule also ceased, and it logically followed that when it occurred to the courts that a particular rule had never been founded upon reason, and that no reason existed in support thereof, that rule likewise ceased, and perhaps another sprang up in its place which was based upon reason and justice as then conceived. No rule of the common law could survive the reason on which it was founded. It needed no statute to change it but abrogated itself. *People v. Randolph* (1855), 2 Park. Crim. Cas. (N. Y.) 174; *Metropolitan Life Ins. Co. v. Clark* (1911), 145 Wis. 181, 129 N. W. 1065, 37 L. R. A. (N. S.) 717; *Beardsley v. Hartford* (1883), 50 Conn. 542, 47 Am. Rep. 677." *Ketelsen v. Stilz*, 184 Ind. 702, 111 N. E. 423.

The adoption of the common law in the most general terms by any state would not admit of an unqualified application of all its rules without regard to local circumstances and the then present enlightened conception of reason and justice, for the common law is applicable only in so far as it is suited to the genius, spirit, and objects of its intentments affecting the society of the state.

It is apparent from section 49-101, R. S. 1943, *supra*, the legislature did not intend to petrify the rules of the common law as declared by judicial decisions at any one time or

period, and to set them in such inflexible form as to make them absolute rules of decision throughout all times. The theory of our adopted system is that the law consists, not in the actual rules enforced by the decisions of the courts, but consists only in the principles from which these rules flow.

Having in mind the foregoing, we turn to the subject matter—whether attorneys while attending court in jurisdictions other than those in which they reside are exempt from service of summons upon grounds of public policy, for the purpose of protecting courts from interruption and delay and for promotion of free and fair administration of justice, as in the case of the nonresident parties and witnesses, is a matter upon which there is much difference of judicial opinion. See 42 Am. Jur., sec. 141, p. 122.

This court, in *Chicago, B. & Q. R. Co. v. Davis,* 111 Neb. 737, 197 N. W. 599, stated that the rule exempting nonresident parties and witnesses from service of process while attending a trial in a state other than their residence is well-nigh universal. So, we are concerned here only as to whether the rule should be extended to include nonresident attorneys who are in the state under the circumstances heretofore related. Many courts extend to a nonresident attorney immunity from the service of civil process during the time in which he is going to, remaining at or returning from the place where his client's business is transacted, upon the ground that the administration of justice demands such exemption, even though resident attorneys have no such privilege or immunity. See *Durst v. Tautges, Wilder & McDonald,* 7th Cir., 44 F. 2d 507, 71 A. L. R. 1394-1399; *Hoffman v. Bay Circuit Judge,* 113 Mich. 109, 71 N. W. 480.

In *Central Trust Co. v. Milwaukee Street Ry. Co.,* 74 F. 442, it is said: "The ancient rule in England extended to practicing attorneys generally the privilege from arrest by the ordinary process of court, on the theory that they were 'always supposed to be there attending,' and that the 'business of the court or their client's causes would suffer by their being drawn into any other than that in which their personal attendance is required.' 3 Bl. Comm. 289; Bac.

Abr. tit. 'Privilege.' * * * But, out of the common-law rule, it has become firmly established in the courts of the Union that 'all persons who have any relation to a cause which calls for their attendance in court, and who attend in the course of that cause, though not compelled by process, are, for the sake of public justice, protected from arrest in coming to, attending upon, and returning from the court. Tidd, Prac. 196; 1 Greenl. Ev. secs. 316-318, and cases cited.' In re Healey, 53 Vt. 694, 38 Am. Rep. 713, and notes, page 717. Necessarily, if not primarily, the immunity extends to the attorney representing the cause of his client before the court. In that view it is stated in Brooks v. Patterson, 2 Johns. Cas. 102, 'The object is that attorneys may not be drawn into other courts, or to other business, to the injury of the suitors,' but that 'the privilege is that of the court, for the sake of public justice, and is not intended as an accommodation to the individual.' And in the leading case of Parker v. Hotchkiss, 1 Wall. Jr. 269, * * * it is said, in the opinion * * * that the privilege is that of the court, and the immunity of the parties is incidental; that it arises 'in the necessities of the judicial administration, which could be often embarrassed, and sometimes interrupted,' if suitors and officers were not thus protected; * * * ."

In *Long v. Ansell,* 293 U. S. 76, 55 S. Ct. 21, speaking of common-law rule as heretofore set out: "That rule of practice is founded upon the needs of the court, not upon the convenience or preference of the individuals concerned."

In *Lamb v. Schmitt,* 285 U. S. 222, 52 S. Ct. 317, it is said: "The general rule that witnesses, suitors, and their attorneys, while in attendance in connection with the conduct of one suit are immune from service of process in another, is founded, not upon the convenience of the individuals, but of the court itself. *Page Co. v. MacDonald,* 261 U. S. 446; *Stewart v. Ramsay,* 242 U. S. 128, 130; *Hale v. Wharton,* 73 Fed. 739; *Diamond v. Earle,* 217 Mass. 499, 501; 105 N. E. 363; *Parker v. Marco,* 136 N. Y. 585; 32 N. E. 989. As commonly stated and applied, it proceeds upon the ground that the due administration of justice requires that a court

shall not permit interference with the progress of a cause pending before it, by the service of process in other suits, which would prevent, or the fear of which might tend to discourage, the voluntary attendance of those whose presence is necessary or convenient to the judicial administration in the pending litigation. See *Bridges v. Sheldon,* 7 Fed. 17, * * * ." See, also, *Brooks v. State ex rel. Richards,* 3 Boyce (Del.) 1, 79 Atl. 790; *Netograph Mfg. Co. v. Scrugham,* 197 N. Y. 377, 90 N. E. 962; *Read v. Neff,* 207 F. 890; *Williams v. Hatcher,* 95 S. C. 49, 78 S. E. 615; *Kansas Wheat Growers Assn. v. Moffat,* 129 Kan. 537, 283 Pac. 634.

The foregoing cases are in accord with the respondent's contention that the common law exempted nonresident attorneys from civil process for the reasons given therein.

From a case analysis of all the decisions respecting the question here involved, we believe the most substantial and logical holding would be that the effect of service of summons upon a nonresident attorney does not operate like an arrest, to deprive the client of the attorney's services, or tend to interfere with the dignity and authority of the court. Neither can we conclude that the service of process such as a summons on a nonresident attorney would delay or obstruct the orderly procedure in the administration of justice.

" * * * the mere service of summons upon an attorney while in attendance upon the court cannot be said to so embarrass the attorney and distract his attention from the cause of his client as to deprive the latter of the benefit of counsel, and thus deny him his legal right." 42 Am. Jur., sec. 141, p. 122. See *Paul v. Stuckey,* 126 Ark. 389, 189 S. W. 676.

In the case of *Chicago, B. & Q. Ry. Co. v. Davis, supra,* this court refused to extend the exemption and immunity to include nonresident attorneys where the nonresident attorney comes into the state for the purpose of taking depositions to be used in the trial of an action pending in another state, holding that under such circumstances, service of summons may be had upon the nonresident attorney, citing

*Nelson v. McNulty,* 135 Minn. 317, 160 N. W. 795, to like effect, and *Berlet v. Weary,* 67 Neb. 75, 93 N. W. 238, wherein a member of the legislature claimed immunity of the service of process while at the seat of the government. The court held: " * * * the law of this state makes no distinction as to the service of summons between members of the legislature and other persons, and that a member of the legislature in a proper case may be served with summons while at the seat of government for the purpose of attending the legislative session."

The respondent contends that *Chicago, B. & Q. Ry. Co. v. Davis, supra,* inferred that if a nonresident attorney came into this state to try a case pending in the courts of this state, he would be exempt from service of civil process. With this contention we are not in accord. *Chicago, B. & Q. Ry. Co. v. Davis, supra,* says: "Other cases supporting the view that a nonresident attorney is not exempt from civil process are: *Greenleaf v. Peoples Bank,* 133 N. Car. 292, 63 L. R. A. 499; *Paul v. Stuckey,* 126 Ark. 389, L. R. A. 1917B, 888."

In *Greenleaf v. People's Bank,* 133 N. C. 292, in the concurring opinion of Clark, C. J., citing from Judge Cooley in a note to his work on Constitutional Limitations (5th ed.) p. 161, it is said: " 'Exemption from arrest is not violated by the service of citation or declaration in civil cases.' Besides, there was at common law no exemption of lawyers from service of process other than *arrest,* and the reason for the latter was that it would be an injury to clients whose cause had been prepared for trial by such counsel to suddenly deprive them of his services, but service of a summons does not have that effect * * * .

"In England, Blackstone says (3 Bl. Com., 289) that lawyers could not be *arrested* on civil process while in attendance upon court, but could be served with a bill, without arrest, which was equivalent to service of summons."

In the Annotation to 71 A. L. R., p. 1402, a summary of the holding in *Greenleaf v. People's Bank, supra,* is made in the following language: " * * * there was no statute law

exempting attorneys from service of process, and that there was nothing in the common law affording them such protection; that the commonlaw immunity of such persons from arrest on civil process gave no reason for a privilege as to civil process not in arrest, since the privilege of exemption from arrest was not so much for the benefit of the lawyer as it was for that of the client, and for the court to whom the attorney gave aid in the due administration of justice."

In the case of *Paul v. Stuckey, supra,* the court refused to vacate a summons served on a nonresident attorney engaged in litigation. The court recognized the public policy necessitating the exemption of parties and witnesses when attending court in another county, but said: "We cannot see that the mere service of summons upon an attorney while in attendance upon a court in his professional capacity would in any way infringe upon the dignity or invade the prerogatives of the court. It could not interrupt the orderly progress of trials nor tend in the least to hamper and embarrass the courts in the administration of justice. Therefore, as we view it, the public good would not be adversely affected by such procedure, and the rule of public policy applicable to suitors does not obtain. * * *

"The effect of the service of summons upon a nonresident attorney does not operate, like an arrest, to deprive the client of the services of his attorney, nor does it tend to interfere with the dignity and authority of the court, and thus to delay and obstruct its orderly procedure in the administration of justice. Nor can it be said that the mere service of a summons upon an attorney, while in attendance upon the court could have the effect to so embarrass the attorney and distract his attention from the cause of his client as to virtually deprive the latter of the benefit of counsel and thus deny him his legal right.

"When an attorney goes into a jurisdiction other than that of his residence to represent a client before a court in a cause there pending he does so by virtue of private contract and of his own motion. His case is not like that of one who has to attend upon the court as a suitor, a juror, or a

witness. He is not under the protection of the court because he is in attendance thereon in obedience to its process or because he has entered its portals as a suitor."

To hold that nonresident attorneys are immune from the service of summons, or other process, not in arrest, while they are voluntarily in attendance upon the court upon their private business, would be to confer upon them a special privilege not enjoyed by resident attorneys. See *Kutner v. Hodnett,* 59 Misc. 21, 109 N. Y. Supp. 1068.

No rule of public policy in the administration of justice is infringed by denying the privilege to nonresident attorneys, of being exempt and immune from service of summons in this state, while in attendance upon the courts of this state, for their clients. To establish such a principle would be discriminatory as against those engaged in other professions or business because they might come within the boundaries of this state. The doctrine of equal rights to all and special privileges to none finds expression not only in the Constitution of the United States, but in the organic law of every state in the Union. The whole fabric of government rests upon the principle of equality and liberty.

"Any decision which separates the bar from the people, in sympathy or identity of privileges, would prove one of the greatest curses which could befall the profession. From the day when it is made, the bar itself will receive an impulse downward in the eyes of the community. * * * so extensive a question should be determined upon the broad foundation, that the general justice of the country should alike prevade all ranks and professions." *Elam v. Lewis,* 19 Ga. 608.

We conclude that the special appearance of Tautges, wherein he claims exemption and immunity personally from the service of summons in this state as a nonresident attorney, should be overruled and the trial court should enter order accordingly.

Relator next contends the court erred in holding that the service of process upon William A. Tautges while in Nebraska for the purpose of trying a suit pending in the courts

of this state, was not sufficient service upon the association of Tautges, Rerat & Welch, of which he was a member.

Section 25-314, R. S. 1943, provides as follows: "Process against any such company or firm shall be served by a copy left at its usual place of doing business within the county with one of the members of such company or firm or with a clerk or general agent thereof. * * * ."

The relator introduced several exhibits in an endeavor to show a copartnership. If these exhibits show anything, they disclose that these attorneys maintained their offices for the practice of law in Minnesota, and also as evidenced by a letter with a letterhead designating the location of the law offices of Tautges, Rerat & Welch as the 8th floor of the Foshay Tower, Minneapolis 2, Minnesota.

The relator pleads in his petition that the three attorneys engaged in the profession of law, maintaining their offices in the city of Minneapolis, state of Minnesota, under and by the partnership name of Tautges, Rerat & Welch, and in their individual persons and as such copartners, are made respondents herein.

"Where the members of a copartnership reside in another state and are not within this state, service of summons upon the firm, as a firm, cannot be made in a county where it has no usual place of doing business." *Stelling v. Peddicord*, 78 Neb. 779, 111 N. W. 793.

"Where the statutes so provide, process in an action against a partnership may be served by leaving a copy at its usual place of business with one of its members or with its clerk or general agent or other specified person, but to justify such procedure plaintiff must bring himself within the terms of the statute." 47 C. J., sec. 497, p. 973.

Section 25-1244, R. S. 1943, provides: "An affidavit may be used * * * to prove the service of summons, * * * ." The affidavits filed in the instant case, and the exhibits, disclose that the respondents, Tautges, Rerat & Welch, were not engaged in the practice of law as copartners in the state of Nebraska, and that such respondents did not have a usual place of doing business or maintain an office therefor in the state.

The sheriff's return is not conclusive of the fact, and respondents may show the true fact.

The trial judge properly sustained the special appearance of Tautges, Rerat & Welch objecting to the jurisdiction of the court in that service was not obtained upon this respondent as a copartnership.

For the reasons given in this opinion, the judgment of the trial court is affirmed as to the dismissal of the action as to the association of Tautges, Rerat & Welch, and otherwise reversed, and the cause is remanded with directions to enter order overruling the special appearance of William A. Tautges.

AFFIRMED IN PART AND REVERSED IN PART.

CARTER and CHAPPELL, JJ., concurring.

We agree fully with the finding of facts contained in the opinion and the law announced applicable thereto. The opinion, however, should not be construed as in any manner changing the common law method of obtaining service of process on a partnership by proper service upon all its members. Neither does it change the rule announced in *Winters v. Means,* 25 Neb. 241, 41 N. W. 157, to the effect that service of process upon a partnership will be allowed where all members of the partnership within the state are properly served, whether or not it has a place of business within the state.