STATE, EX REL. C. A. SORENSEN, ATTORNEY GENERAL, V. FIRST STATE BANK OF ALLIANCE, APPELLANT: CITY OF ALLIANCE, APPELLEE.

FILED DECEMBER 16, 1931. No. 27989.

*F. C. Radke, Barlow Nye* and *W. A. Crossland,* for appellant.

*Boyd & Metz, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

ROSE, J.

In a proceeding by the state to wind up the affairs of the First State Bank of Alliance, an insolvent banking corporation, the city of Alliance intervened and presented a claim for deposits on an equality with all unpaid depositors having preferred claims.

The First State Bank suspended the business of commercial banking December 30, 1929, when the city had on deposit therein $14,691.56 on which there was accrued interest of $189.15, making a total of $14,880.71. As security for city deposits the First State Bank, September 20, 1929, had pledged seven 1,000-dollar 5 per cent. Federal Land Bank bonds, all of the face value of $7,000, which, for that purpose, were delivered to the Lincoln Trust Company. The bonds were sold June 4, 1930. The net proceeds were $7,158.09 which were credited on the city's deposits. For the difference between the deposits and interest amounting to $14,880.71 and a credit of $7,158.09 derived from the sale of the bonds, or $7,722.62, the city filed with the receiver a claim as a valid unsecured preferred claim against the assets of the First State Bank entitling claimant to participate in the depositors' final

settlement fund. The receiver treated the city's claim as a general one payable only from assets of the First State Bank after payment of preferred claims of depositors. Later the city intervened by petition, pleaded in detail the facts constituting its claim and asserted the right to have it adjudged a preferred claim entitling intervener to share the assets of the bank on an equality with other preferred creditors and to participate in the depositors' final settlement fund.

An answer of the receiver to the petition in intervention contained a general denial and a plea that intervener's claim was "otherwise secured" and therefore not a preferred claim within the meaning of the statute which in part provides:

"The claims of depositors, for deposits, not otherwise secured, and claims of holders of exchange, shall have priority over all other claims, except federal, state, county and municipal taxes, and subject to such taxes, shall at the time of the closing of a bank be a first lien on all the assets of the banking corporation from which they are due and thus under receivership, including the liability of stockholders, and, upon proof thereof, they shall be paid immediately out of the available cash in the hands of the receiver. If the cash in the hands of the receiver available for such purposes, be insufficient to pay the claims of depositors whose deposits are not otherwise secured, and holders of exchange, not given for a previously existing debt of the bank other than a deposit, the court in which the receivership is pending, or a judge thereof, upon hearing shall determine the amount required to supply the deficiency and cause the same to be certified to the department of trade and commerce as a claim entitled to the benefits of the depositors' final settlement fund." **Comp.** St. 1929, sec. 8-1,102.

The facts pleaded by the receiver as defenses were put in issue by a reply.

Upon a trial of the issues raised by the pleadings the district court found that intervener had a valid preferred

claim on the assets of the First State Bank for $7,722.62; that intervener was entitled to the benefit of the depositors' final settlement fund; that the receiver had in his hands sufficient cash to pay a dividend of 45 per cent. on preferred claims, including the claim of intervener. The decree directed the receiver to pay forthwith to intervener, in common with other preferred depositors in the same class, a dividend of 45 per cent., or $3,475.18, and requiring certification of the balance of the claim, or $4,247.44, to the department of trade and commerce as an adjudicated claim entitling intervener to participate in the depositors' final settlement fund. The receiver appealed.

The appeal presents this question: Was the city of Alliance a preferred creditor of the First State Bank within the meaning of the statutes? Stated differently, did the city, by exacting bonds as security for its deposits, prevent itself from participating in the assets of the bank and in the depositors' final settlement fund for the difference between the amount of the deposits and the proceeds of the bonds, on an equality with preferred creditors or depositors "not otherwise secured?" In the briefs and in the arguments at the bar the question was skilfully presented on both sides. The solution depends on what the legislature meant by the term, "not otherwise secured," as used in that portion of the statute already quoted, when considered with all statutes relating to banks and banking, to the winding up of insolvent banks, to the distribution of assets among creditors and to the depositors' final settlement fund. There is no dispute about any material fact. The facts relating to the deposits of the city, to the bonds pledged as security and to the application of the proceeds of the bonds are as herein recited in the statement of the case.

In addition to bank assets available to creditors in case of insolvency, the legislature made provision for the creation of what is called "Depositors' final settlement fund." This fund is not the property of insolvent banks. It is a trust fund created for the benefit of unpaid depositors

"not otherwise secured" and of holders of exchange. How it shall be disbursed depends on legislation. It was competent for the legislature to make provision for the disbursement of this fund and the proceeds of bank assets. For purposes of legislation the power to classify objects and persons in different situations is undoubted. *Cleland v. Anderson,* 66 Neb. 252. In the statute under consideration the legislative intent to divide deposits into different classes seems clear. One class includes deposits of creditors who rely for security on the bank assets, on the depositors' final settlement fund and on the integrity of the bank and its officers. Another class, not relying on such security, includes deposits of creditors that exact security in the form of bonds or other obligations—a class "otherwise secured." This classification must be considered in determining the priority of claims for deposits. The legislature did not say that a depositor may have a single deposit in both classes, if the proceeds of collateral security pledged to him are insufficient to pay his claim in full. The legislative classification and the general import of the statute indicate the contrary. A depositor "not otherwise secured" cannot resort to the proceeds of bonds pledged to another depositor as security for the latter's deposits. If a depositor partially protected by collateral security were permitted to share the proceeds of bank assets as a preferred creditor on an equality with other depositors not so protected, he would have an advantage over them. The legislation as a whole does not seem to indicate such an intention. An interpretation to that effect would extend the term "otherwise secured" beyond its natural import, when the context is considered. Intervener elected to take bonds as security and afterward made deposits in double the amount of the bonds. It thus became a depositor "otherwise secured" and voluntarily kept its deposits in that class. Excess deposits over proceeds of the pledged bonds are not in the other class. Even in that situation intervener appears to have fared better than depositors "not otherwise secured." From proceeds of its security it

realized more than 50 per cent. of its deposits, while the record shows that preferred creditors "not otherwise secured" shared a dividend of 45 per cent. The record does not show that the legislative classification is unreasonable or that it is inhibited by that part of the federal Constitution relating to due process of law and to the equal protection of the laws. Between the persons and objects classified there is a substantial difference in situations. Persons in one class of depositors have security not available to the other class. There is substantial reason for diverse legislation relating to the persons and objects classified. The statute operates uniformly on all persons and objects in a class. The classification therefore was within legislative power. *Wenham v. State*, 65 Neb. 394; *Cleland v. Anderson*, 66 Neb. 252; *Althaus v. State*, 94 Neb. 780. In this view of the law intervener was "otherwise secured" and not in the class entitled to share as preferred creditors the assets of the bank and the depositors' final settlement fund. Within the meaning of the statute intervener's claim should have been allowed only as a general one and the district court erred in holding otherwise. The judgment from which the appeal was taken is therefore reversed and the cause remanded for a decree conforming to this opinion.

REVERSED.