STATE, EX REL. C. A. SORENSEN, ATTORNEY GENERAL, v. SOUTH OMAHA STATE BANK, APPELLEE: MARYLAND CASUALTY COMPANY, INTERVENER, APPELLANT.

FILED APRIL 11, 1935. No. 29450.

Crossman, Munger & Barton, Varro H. Rhodes and Story & Thomas, for appellant.

F. C. Radke and O'Sullivan & Southard, contra.

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY, PAINE and CARTER, JJ.

PAINE, J.

From a judgment of the district court, classifying the claim of intervener as a general rather than a preferred claim against the assets of an insolvent state bank, intervener has appealed.

This cause has been advanced for hearing, as it is a case stated, under subdivision c of rule 9 of the rules of this court. No facts are in dispute, and only questions of law are involved.

The South Omaha State Bank was closed August 13, 1931, and was adjudicated insolvent, and on August 29, 1931, E. H. Luikart, secretary of the department of trade and commerce, was appointed receiver. Said bank was a duly authorized depository of the city of Omaha, and on December 29, 1930, said city received a depository bond of the Maryland Casualty Company, intervener herein, in the

amount of $25,000. which was duly approved by the city council.

On January 1, 1931, a similar depository bond, in the amount of $55,000, of the Glens Falls Indemnity Company, was also received by said city in behalf of its funds deposited in said bank, and was also in effect when said bank closed, but which bond is not involved in this proceeding. When the bank closed there were deposits of the city of Omaha of $39,249.97 in said bank, the same being public funds. There were no set-offs or counterclaims against said deposits.

The Maryland Casualty Company paid the city on its bond its full *pro rata* share of said deposit, in the sum of $12,265.62, on December 23, 1931. Thereupon, the city council, by proper resolution, authorized the city treasurer to execute and deliver to said casualty company, intervener, an assignment of its right, title, and interest in and to said deposit up to the amount paid by said intervener, and notice thereof was given to the receiver on January 12, 1932.

The receiver classified the claim of the city of Omaha for said deposit as a general claim, payable only after all preferred claims for deposits had been paid, and the district court confirmed said classification. Timely objection was made by the intervener to such classification.

The entire premium on the depository bond was paid by the bank, which did not give the intervener any collateral or security to protect said deposit. The bank had assets on hand at the time it closed in excess of $500,000. It is agreed that no part of the claim belonging to the intervener has been paid by the receiver.

It is further agreed that the city of Omaha, pursuant to sections 2-5, art. XI of the Constitution, did on July 18, 1922, adopt its home rule charter, included in which was that section of the statutes of Nebraska now designated as section 14-547, Comp. St. 1929, and which section thereby became a part of the home rule charter, being section 44, art. IV, therein, and that the same is now in full force and effect.

The intervener is not now claiming consideration on constitutional grounds, as such questions have been eliminated from the consideration of this court.

The city of Omaha complied in every particular with the statute, and the bank has done the same, and has furnished a bond, and the bond was paid for out of the funds of said bank. Under the law, section 14-547, Comp. St. 1929, the city of Omaha could make no deposit in the bank unless such deposit was protected by a bond. It is insisted by appellant that this case is different from other cases we have had involving the same bonds, in that it brings up for our consideration the provisions .of the home rule charter of the city of Omaha.

One of the cases involving the law in question was that of *State v. First State Bank,* 122 Neb. 109, in which the city of Alliance had required the First State Bank to put up with it seven Federal Land Bank bonds as security for the deposit of the city in the amount of $14,691.56 on the date that the bank failed. The bonds were sold and applied on this deposit, and there was a balance due the city from the bank of $7,722.62, for which the city of Alliance filed a claim, asking that the same be allowed as a preferred claim, being the amount of its loss on its deposit over the collateral put up as security. Section 8-1,102, Comp. St. 1929, divides depositors into two classes: One who relied upon the bank assets; and, second, another class which can have their deposits "otherwise secured" by requiring the bank to put up a bond or collateral. The city of Alliance should have required security for all of its deposits, but for some reason deposited funds to double the amount of its security; but as a city is in a special class, which has the right to demand and obtain security, and failed to do so, this court held that it was only entitled to file its claim for its loss as a depositor that was "otherwise secured."

The question came to this court again in *State v. First State Bank of Alliance,* 122 Neb. 502, which involved Box Butte county, which had deposits of $28,961.67, secured by

a pledge of Liberty bonds, and among other bonds a depository bond for $8,500 of the National Surety Company, intervener, and such intervener asked to have the amount it had paid on its bond allowed as a preferred depositor's claim and paid in full. It was there held that the bank did not hold such deposits as a trust fund under section 77-2506, Comp. St. 1929, and that such county funds were to be considered as a deposit "otherwise secured," and not entitled to an equality with general depositors.

This question came before this court again in the case of *State v. Bank of Campbell,* 125 Neb. 485, in which two individuals intervened and asked to have time certificates of deposit, drawing 4 per cent. interest, allowed on an equality with other general depositors as preferred claims, even though they had required certain officers of the bank to personally indorse said certificates. As it appeared that no part of the bank's assets was used in procuring such voluntary indorsements, this court held that the deposits of the interveners were not in the class of deposits "otherwise secured," and the certificates of deposit were allowed as preferred claims against the assets of the bank.

In the case of *State v. State Bank of Omaha,* 125 Neb. 492, it appeared that the city of Omaha had on deposit $8,676.09 when the bank failed, and had a depository bond of the New Amsterdam Casualty Company to protect the same, the bank having paid the entire premium upon the bond. The intervener, having paid the amount of the deposit to the city, took an assignment of its claim from the city, and presented it for allowance in full as a preferred claim. In this decision it is pointed out that the bank's assets could not be used or pledged to guarantee the deposits except in the case of public funds, and it was held that the intervener's claim, founded upon the city deposit which it had paid, could not be allowed except as a general claim. It happened in this same case that the same bonding company had given a bond to protect the funds of Douglas county in the same bank at the time of its closing to the amount of $40,000, which it also paid in full, but in

the case of the county deposit, as Douglas county pur-. chased the bond and paid the premium thereon, which did not deplete the assets of the bank in any way, it was held that on the cause of action, based on the deposit of county funds, such funds were not "otherwise secured."

It therefore appears that this court has had before it this same question in several forms, and while the other cases did not involve the home rule charter of the city of Omaha, yet the court has heretofore considered the sections of our statute relating to such bond protecting deposits·of public funds, and has passed upon the question of law involved.

It is evident to the court, in spite of the very able argument, that the provisions of the home rule charter do not in any way change the legal situation, and that in the case at bar, the bank having purchased the bond and paid all of the premium thereon, thereby depleting the assets of the bank to that extent, the deposit was "otherwise secured," and cannot be allowed as a preferred claim against the assets of the bank, and cannot be allowed to participate in the distribution of assets on a par with the unsecured depositors in said bank. It can only be allowed as a general claim, and the decree of the trial court in that regard was right, and is hereby

AFFIRMED.