HELEN SHUMWAY ET AL., APPELLEES, V. DEPARTMENT OF BANKING, RECEIVER, APPELLANT.

FILED JUNE 12, 1936. No. 29464.

*F. C. Radke, W. A. Crossland* and *John A. Young,* for appellant.

*I. D. Beynon* and *Frederick L. Wolff, contra.*

Heard before GOSS, C. J., GOOD, DAY, PAINE and CARTER, JJ., and KROGER and IRWIN, District Judges.

PAINE, J.

Interveners filed claim for $9,571.12 against assets of the Farmers Bank of Lyons. The receiver thereof classified it only as a general claim. Upon appeal to the district court, it was decreed to be a trust fund, payable in full as a first preferred lien out of the assets of the insolvent bank. The department of banking appealed.

This case was first argued to division No. 1 of this court on December 2, 1935, and an opinion entered, which is found in 130 Neb. 491, 265 N. W. 553, which opinion, released February 28, 1936, is hereby withdrawn by this court. The oral argument on the motion for rehearing was allowed on May 18, 1936, to the full court.

The evidence discloses that financial difficulties overtook the Farmers Bank of Lyons, Burt county, Nebraska,

on January 6, 1933, and it was taken over as insolvent by the department of banking of the state of Nebraska on January 7, 1933, and did not, at any time after said date, open its doors and operate as a going concern, but remained in charge of the department of banking, and with its doors closed, until May 20, 1933. The provisions were then complied with, under which an insolvent bank might be allowed to reopen for the sole purpose of doing a "limited banking business," in strict accordance with House Roll No. 167, Laws 1933, ch. 16 (Comp. St. Supp. 1933, sec. 8-1,121), which had become a law on February 1, 1933, under its emergency clause. As so reopened, it was still an insolvent bank. No cash reserve was required. This restricted operation continued until October 30, 1933, when the bank was declared insolvent and formal liquidation commenced. Solvency of the bank was never restored after the original closing on January 7, 1933, under section 8-116, Comp. St. 1929, reading in part: "A banking corporation subject to the provisions of this article shall be deemed to be insolvent when the actual cash market value of its assets is insufficient to pay its liabilities to its depositors, or when it is unable to meet the demands of its creditors in the usual and customary manner, or when it shall fail to make good its reserve as required by law, or when the stockholders, upon notice from the department of trade and commerce or its successor, shall fail to make good an impairment of its capital."

The testimony shows that the bank had made written application on May 3, 1932, to become depository for the funds of the village of Lyons, and the trustees of said village named the bank as its depository and accepted $13,000 of securities of the bank as collateral to a personal bond of the officers of the bank in the sum of $15,000 as full security for the village deposits. Later a new bond was furnished by the bank in the sum of $20,000, signed by Helen Shumway and Clara A. Christiansen as sureties, and the securities which had been previously

pledged to the village were transferred to these two sureties for their protection on the personal surety bond they had given for the bank. On June 1, 1932, the board of trustees accepted and approved the new bond, and the village treasurer continued to deposit and withdraw funds from said account until the bank was taken over as insolvent on January 7, 1933, at which time the village had on deposit in such checking account the sum of $16,965.77, secured by the depository bond of the interveners and appellees, who were protected by the securities they had received for signing the bond.

While the bank was closed and in possession of the department of banking, and before it had been permitted to reopen under restrictions, the village board brought action on the bond of the interveners for the amount of the deposit of the village. The sureties and interveners confessed judgment upon condition that no execution would issue against them if they would make a $5,000 payment on September 1, 1933, another payment September 1, 1934, and the balance September 1, 1935, which agreement was approved by the village trustees May 2, 1933, and a judgment was entered by the district court against the sureties on May 12, 1933. The deposit of the village was assigned to the sureties; that is, the village deposit was to be closed out and an account opened in the name of the two sureties for exactly the same amount. The sureties took whatever interest the village had in its deposit which had been otherwise secured.

The sureties sold the securities which had been pledged to them by the bank, and received $7,199.33 upon securities which had a face value of about $13,000. This amount was paid to the village to reduce the liability on the judgment, and the deposit in the bank thereby was reduced to $9,766.44.

Helen Shumway and Clara A. Christiansen, sureties, filed a petition in intervention on March 21, 1934, alleging that the village of Lyons wrongfully and unlawfully deposited funds of said village with said bank, contrary

to the statutes of Nebraska; that said bank did not apply for the privilege of becoming a depository, and that the village board did not designate nor approve said bank as a depository, and that said bank paid no interest on such deposits, and that the village treasurer was without authority to make a general deposit of funds in said bank, and that the said village had a preferred claim for such trust funds against the assets of the bank. On May 12, 1933, the said village duly assigned to the interveners its claim against the bank, and interveners allege that the receiver erroneously refused to classify the claim as a claim for trust funds, and erroneously classified it as a general claim, and they ask that the action of the receiver be set aside, and that they be given a valid preferred claim in the sum of $9,571.12.

The superintendent of banks filed an answer thereto, and insists that said claim was properly classified for the reason that it was a claim based upon a deposit which was otherwise secured under section 8-1,102, Comp. St. Supp. 1933, and alleges that on January 7, 1933, the said village of Lyons had a general checking account, which was secured by a bond, and that the principal on said depository bond was the bank, and the two sureties thereon were the two interveners herein, and that to protect said interveners as sureties on said bond the bank pledged for their protection certain securities, the face value thereof being some $13,000; that from the sale thereof the sureties realized only the amount of $7,199.33, which, upon being applied to the reduction of the deposit of the village in said bank, left a balance due the village from the sureties in the sum of $9,766.44, upon which amount two dividends of one per cent. have been paid to the sureties, leaving a net balance due thereon of $9,571.12.

The trial court decided against the banking department, and decreed that the interveners had a claim for trust funds in the full sum of $9,571.12, with interest at 6 per cent., and directed that the same was entitled to priority payment from the assets of the bank before the claims

of unsecured depositors were paid, from which order an appeal was taken to this court.

A number of errors are set out, but the errors in the findings of the district court that the bank was not legally appointed the village depository, and that said funds were unlawfully mingled with the general assets of said bank, and that the bank had become a trustee as to such deposits, are argued at length.

W. S. Newmyer testified that for many years he had been president of the bank, and that he was the father of the two interveners who had signed the bond as sureties for the bank. He further testified that for 25 years the bank had paid no interest to the village on its deposit in said bank, and that the village funds were mingled with the other assets of the bank; that the bank had, on its part, agreed to collect the water and light bills for the village each month and to render such collection service as an offset for the interest which should have been paid the village on its deposit, which deposit at times ran as high as $30,000.

The bank filed application to be appointed a depository, and, by resolution of the village board, was so selected. For the next year the resolution passed by the board was not signed by the chairman and clerk. However, the village, under section 77-2601, Comp. St. 1929, brought an action against the sureties who had given a bond to protect the deposit of the village in the bank.

The sureties did not contest this suit but consented to judgment being entered against them on condition that execution on said judgment would be stayed if the sureties would make payments as hereinabove set out. It was proper for the village clerk to identify the records and minutes of the village board, as he was responsible for their custody.

When the village board brought suit to collect from the two sureties on their bond, the sureties confessed judgment, thereby admitting that the bank was a legal depository. By the record made, this bank was legally

designated as the depository bank for the village funds. Both the bank and the village acted on that understanding. The mere fact that the bank rendered a monthly service in the collection of light and water bills for the village instead of paying interest would not destroy the legal designation of the bank as a depository.

The appellees call our attention to the case of *Village of Overton v. Nagel*, 128 Neb. 264, 258 N. W. 461, but the holding does not apply to the case at bar, where the bank had been approved as a depository by the village board.

In *Bliss v. Mason*, 121 Neb. 484, 237 N. W. 581, it is provided that a state bank may pledge its assets to secure the repayment of county deposits in such depository bank, and, further, that a state bank designated as a depository may lawfully pledge its assets to protect sureties upon such depository bond for public funds, as was done in this case. It is unfortunate that the bonds upon being sold brought only the amount of $7,199.33. The interveners now seek to have their claim for the balance of $9,571.12 declared a trust fund and payable in full out of the assets of the bank. It cannot be done, for the bank's assets were used to protect and secure the bondsmen. *State v. State Bank of Omaha*, 125 Neb. 492, 251 N. W. 99.

We held in *State v. First State Bank*, 122 Neb. 109, 239 N. W. 646, that, when a city relied upon a bond, the balance of a deposit unprotected was only a general claim. See, also, *State v. South Omaha State Bank*, 128 Neb. 733, 260 N. W. 278; *State v. Bank of Campbell*, 125 Neb. 485, 251 N. W. 101. In *State v. Platte Valley State Bank*, 128 Neb. 562, 259 N. W. 643, we held that, by assignment of an adjudicated claim against an insolvent bank, the assignee acquires only the rights of the assignor. See, also, *Kullman & Co. v. Woolley*, 83 Fed. (2d) 129, decided April 18, 1936. In the case at bar, these sureties could have demanded that the bank put up additional bonds for their protection, and the bank could legally have complied

therewith, but the sureties did not protect themselves in this manner allowed under the law.

It is clear that the assets of the Farmers Bank of Lyons were depleted to a large amount by reason of the pledge of the securities of said bank, and that the sureties received the entire benefit from the sale of said securities, and that this fact clearly brings this case within the law as set out in section 8-1,102, Comp. St. Supp. 1933, as a deposit otherwise secured.

The trial court held that the interveners were entitled to recover a claim of $9,571.12, with interest at 6 per cent. as trust funds, and that the same should be paid as a first, prior and preferred lien on all the assets of the Farmers Bank. Having determined in this opinion that the Farmers Bank had been duly appointed depository under a valid depository contract with the village of Lyons, and that the funds were deposited as ordinary deposits, and not trust funds, and that said deposits were secured by a depository bond, upon which these interveners were sureties, it is the opinion of the court, supported by the authorities herein cited, that it would be inequitable for said interveners to secure priority over all the other depositors of said bank when such interveners had received a deposit of bonds from the bank to protect them as such sureties, and therefore the decree of the district court is reversed and set aside, and it is hereby directed that the action of the receiver of said bank, in classifying the claim of the interveners as a general claim against the assets of said bank, was right, and the decree of the district court is hereby reversed.

REVERSED.