Philadelphia Retail Liquor Dealers Association et al., Appellants, *v.* Pennsylvania Liquor Control Board et al.

Argued September 30, 1948. Before MAXEY, C. J. DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Thomas D. Caldwell,* with him *John Patrick Walsh, Walsh, Tubbis & Dunn* and *Caldwell, Fox & Stoner,* for appellants.

*Horace A. Segelbaum,* Deputy Attorney General, and *T. McKeen Chidsey,* Attorney General, for appellees, were not heard.

*Abraham J. Levinson* filed a brief in propria persona, amicus curiæ.

OPINION BY MR. JUSTICE JONES, November 9, 1948:

The question in this case is whether a screen exhibition by means of television on the premises of establishments licensed under the Liquor Control Act qualifies as one of the types of entertainment which is subjected by the Act to regulation by the Liquor Control Board.

The plaintiffs appeal from a decree of the Court of Common Pleas of Dauphin County dismissing their bill of complaint which sought to restrain the Pennsylvania Liquor Control Board, represented by its individual members, from enforcing a regulation of the Board which requires a liquor licensee to obtain an Amusement Permit as a prerequisite to his use of television devices in his licensed establishment. The case was tried together with a similar suit by other plaintiffs (Jacob.Stern et al. v. Pennsylvania Liquor Control Board). The adjudication, decree nisi and final decree were filed in the latter case but, by stipulation, were made to apply with the same force and effect to the case here involved. It is from the final decree so entered that the plaintiffs took this appeal.

Paragraph (14) of Sec. 602 of the Liquor Control Act of November 29, 1933, P.L. 15 (Spec. Sess. 1933-1934), as amended (47 PS § 744—602 (14), Pkt. Pt.), expressly provides in presently material part that "It shall be unlawful for any licensee . . . to permit, in any licensed premises, or in any place operated in connection therewith, dancing, theatricals or floor shows of any sort, or moving picture exhibitions, . . . unless the licensee shall first have obtained from the board, a special permit to provide such entertainment. . . ." The special permit (commonly known as an Amusement Permit), which paragraph (14) of Sec. 602 thus calls for, was first required by the Liquor Control Act of 1933 as re-enacted and amended by the Act of July 18, 1935, P. L. 1246, see Sec. 602(n). And by Sec. 203(h) of the amendment of June 16, 1937, P. L. 1762, the Board is authorized to adopt regulations with respect to "The issuance of licenses and permits, and the conduct, management, sanitation, and equipment of places licensed or included in permits."

Pursuant to these statutory authorizations, the Board, on March 3, 1947, issued to "All Retail Licensees (Except Clubs)" its Bulletin No. A-62 notifying such licensees that the use of television devices in licensed establishments is unlawful unless the licensee is a holder of a valid Amusement Permit issued by the Board. That is the regulation which the plaintiffs presently seek to obviate.

It is the appellants' contention that television devices are not within the meaning of the term, "moving picture exhibitions," as used in paragraph (14) of Sec. 602, supra; that the Liquor Control Board is without power to adopt any regulation controlling the operation of television devices in licensed establishments; and that the regulation under attack was promulgated without any statutory authority.

The appellants base their argument upon the assertion that television and moving picture exhibitions are

not the same thing. So much may readily be conceded. Television, as the experts describe it, is "Seeing at a distance by electrical means," while a motion picture exhibition is produced by projecting upon a screen, with the aid of light rays, images recorded upon a film with such rapid and changing succession of exposures as to give the optical effect of a continuous picture of the objects even when in motion. The former directly employs natural phenomena; the latter, mechanics. A notable objective difference is that a motion picture may be re-exhibited as often as desired for the life of the film, while a television exhibition, once seen, is gone forever so far as the assembly of the electronic waves upon which the images are carried is concerned. But, merely to point to scientific, technical or practical differences as the distinguishing criteria for determining whether the device is within or without the relevant provision of the Liquor Control Act oversimplifies the one question, here present, of statutory interpretation.

As the Liquor Control Act itself expressly states (see Sec. 3 (a)), it is "an exercise of the police power of the Commonwealth for the protection of the public welfare, health, peace and morals of the people of the Commonwealth"; and the Act further provides that "all of [its] provisions . . . shall be liberally construed for the accomplishment of this purpose." To the same end, the Board is clothed with broad regulatory power over licensees and the legislature expressly enjoined that "every section and provision of the act shall be construed accordingly."

With these legislative admonitions in mind and recognizing also that "The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the Legislature" (Statutory Construction Act of May 28, 1937, P.L. 1019, Sec. 51, 46 PS § 551), we have no hesitancy in holding that what the legislature intended by paragraph (14) of Sec. 602 of the Liquor Control Act was to place under the Board's

supervision and regulation entertainment of certain general types in licensed establishments and that reproduction upon a screen of images or objects in action constitutes such subject entertainment regardless of whether the scenes are produced by means of television or film projectors. In opposition to this conclusion, the appellants erroneously stress the technical differences in the means of reproducing images on the screen and ignore the really determinative factor, viz., the character of the entertainment. The learned court below correctly apprehended the true test when it said that "In our opinion, the stress must be placed upon what the observers in the licensed places see, rather than how the thing seen is produced." The intent of the statutory provision is regulation by the Liquor Control Board of screen exhibitions of action pictures in licensed establishments, and the terms employed by the Act in such connection are sufficiently general as to embrace pictures produced by means of television.

The appellants argue that, because television was unknown or, at least, not practicably usable, when the Liquor Control Act and its pertinent amendments were enacted, the legislature could not have intended to subject to the Board's supervision and regulation exhibitions by television. The contention is without merit. In *Commonwealth v. Quaker City Cab Co.*, 287 Pa. 161, 134 A. 404, the question was whether a taxicab company was liable for the gross receipts tax which Section 23 of the Act of June 1, 1889, P.L. 420, 431, imposed upon "transportation companies." Although taxicabs were unheard of when the Act of 1889 was passed, such a company was held (29 Dauphin 90) to be a "transportation company" within the intent of the Act and, therefore, liable for the tax. In affirming, this Court said (pp. 165-166),—"True, taxicab companies are not mentioned, for the obvious reason that in 1889 there were none. But the statute is prospective and expressed in broad language so as to embrace such companies when

formed and operated as common carriers. 'A general law may, and frequently does, originate in some particular case or class of cases which is in the mind of the legislature at the time, but so long as it is expressed in general language the courts cannot, in the absence of express restrictions, limit its application to those cases, but must apply it to all cases that come within its terms and its general purpose and policy. Hence statutes framed in general terms apply to new cases that arise, and to new subjects that are created, from time to time, and which come within their general scope and policy. . . .': 25 R.C.L. p. 778." In the *Quaker City Cab Co.* case, this Court also quoted with approval from *Commonwealth v. Hawkins,* 14 Dist. Rep. 592, where Mr. Justice FRAZER, (then President Judge of the Court of Common Pleas of Allegheny County), in construing a statute of 1868 authorizing municipal imposition of a license fee on "wagons, carts, cars, drays, coaches, omnibuses and every other description of carriages," held that the terminology embraced automobiles and that it was "not material" that they were unknown when the statute was enacted. The *Quaker City Cab Co.* case was reversed in 277 U. S. 389, but on a point other than the one for which it is presently cited and is continuing authority: see *Fox Film Corporation's Application,* 295 Pa. 461, 470-471, 145 A. 514.

So far, we have treated the question which the appellants raise on the broad ground of the general legislative intent with respect to the character of entertainment in licensed establishments subject to Board control. There is, however, a further reason why the decree in this case would have to be affirmed. The learned court below found and it is not disputed that television is used to broadcast moving picture exhibitions. In that connection, an expert witness called by the plaintiff admitted that when a motion picture is shown on a television set, the same picture there appears as would be seen on the screen where the televised motion picture is

being broadcast. In that situation, such entertainment could not fairly be characterized as other than a moving picture exhibition and, therefore, directly subject to the Board's regulation and control by the express words of the Act. Nor would it be material for a licensee to urge that he uniformly turns off his television set while moving pictures are being broadcast. The capacity of the television device, when in operation, for the rendition of "moving picture exhibitions" well justifies the Board's requirement of an Amusement Permit for the exhibition of televised entertainment in licensed establishments.

Decree affirmed at appellants' costs.