**Rita HODGES et al., Plaintiffs,**

v.

**Herbert FITLE, in his capacity as City Attorney for the City of Omaha, et al., Defendants.**

**Civ. No. 71-O-326.**

United States District Court,
D. Nebraska.

Sept. 27, 1971.

Thomas D. Carey, Omaha, Neb., for plaintiffs.

Edward M. Stein and Gary P. Bucchino, Omaha, Neb., for defendants.

## MEMORANDUM

DENNEY, District Judge.

This matter comes before the Court on the hearing for the issuance of a temporary injunction. The Court, on its own motion has raised the issue of subject-matter jurisdiction based upon the fact that this case involves no substantial federal question. Dismissal for lack of a substantial federal question is entirely proper. Williams v. Miller, 48 F. Supp. 277 [N.D.Cal.1942], affirmed, 317 U.S. 599, 63 S.Ct. 258, 87 L.Ed. 489. *See* Money v. Swank, 432 F.2d 1140 [7th Cir. 1970].

The jurisdictional problem here presented necessarily involves a discussion of the *legal* merits of the constitutional claims, since there is no other way to determine their substantiality without doing so. However, no determination of the factual merits will be made, for the determination that no substantial federal question presents itself here requires that, under full proof of the factual allegations of plaintiffs, no such question is presented. Williams v. Miller, *supra.*

The Court, by order from the bench, dissolved the temporary restraining order which had been previously issued as improvident and did not request arguments on the legal points hereafter presented.

Plaintiffs attack the constitutionality of Municipal Ordinance No. 25989 of the City of Omaha. That ordinance was duly passed as amendatory to Section 18.04.070 of the Omaha Municipal Code. That section of the Omaha Municipal Code sets forth those grounds upon which, after notice and hearing, a retail license to sell alcoholic liquors subject to the jurisdiction of the Omaha City Council may be suspended or revoked.

Ordinance No. 25989 reads, in part, as follows:

Section 1. Section 18.04.070 of the Omaha Municipal Code be, and hereby is, amended by adding thereto a new Subsection, numbered 6, reading as follows:

"6. It shall be cause for revocation or suspension as herein provided if the licensee, his manager or agent, shall allow any live person to appear, or have reasonable cause to believe that any live person shall appear in any licensed premises in a state of nudity, to provide entertainment, to provide service, to act as hostess, manager or owner, or to serve as an employee in any capacity.

For the purposes of this subsection, the term 'nudity' shall mean the showing of the human male or female genitals, pubic area or buttocks or the human female breast including the nipple or any portion below the nipple with less than a full opaque covering."

Section 2. This Ordinance shall be in full force and take effect fifteen (15) days from and after the date of its passage.

Plaintiffs are purported to be "exotic dancers" and allege that this Ordinance has resulted in the following impairments of their federal constitutional rights:

(1) equal protection of the laws;

(2) impairment of the obligations of contracts between plaintiffs and their employer;

(3) impairment of plaintiffs' First Amendment rights as assured to them against state impairment via the Fourteenth Amendment;

(4) a taking of property without due process of law; and

(5) apparently, although it is not clear, a denial of due process in that the ordinance is vague and ambiguous.

The remaining claims are either claims under state law which it is not proper for this Court to decide, pursuant to its findings later expressed, or claims clearly not framed under any alleged federal constitutional protection. Each distinct issue above will be hereafter discussed.

## EQUAL PROTECTION

█ Plaintiffs' claims in the equal protection area under the Fourteenth Amendment seem to rest upon two assertions. The first is that plaintiffs cannot now dress as "people in other public places or on the street or as customers in the place of their employment do." The second assertion presumably falling under this constitutional provision is that the ordinance "denies [plaintiffs] the right to appear in a manner which might lawfully be shown in moving pictures or still photos or as might be done in any other place in Nebraska or in the United States." In light of this Court's determination of the First Amendment issue later in this opinion, the purported rights asserted here are not "fundamental rights" which require the state to have a compelling interest for creating this specific classification. The Court perceives, as fully discussed hereafter, that a reasonable basis exists for this classification, which is all that is required of such legislation. *See, e. g.,* Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 31 S.Ct. 337, 55 L. Ed. 369 [1911].

## IMPAIRMENT OF THE OBLIGATION OF CONTRACT

██ Assuming plaintiffs were *required* under their contracts with their employer, H. and W. Enterprises, to dance "topless", as opposed to there merely being a higher rate of compensation if they did so, plaintiffs cannot complain that a valid exercise of the city's police power has impaired the obligation of their contracts. It should be noted that no one has a vested interest or right to require continuance of the law in the same vein as the time they enter into a contract. Implied into the contract at its inception is the provision that, should the law change to prohibit the activity set out therein, the contract will yield to the law, if it is a valid exercise of the state's police power. *See, e. g.,* Veix v. Sixth Ward Building and Loan Association, 310 U.S. 32, 60 S.Ct. 792, 84 L.Ed. 1061 [1940].

## FIRST AMENDMENT RIGHTS

█ This Court does not understand how any activity or conduct could not be classified as "expression" or "speech" if the dancing here controlled by the Ordinance was so classified. The case most often asserted as authority for the speech via conduct argument is Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 [1969]. The conduct involved in that case was the wearing of a black armband by several high school students in protest of the war in Vietnam and mourning the death of American soldiers in that war. The United States Supreme Court majority recognized that the conduct there involved was expression in the true sense of the word and "closely akin to 'pure speech' * * *.'" That conduct was intended to, and did, convey an opinion on a matter of grave public concern.

However, the Court can conceive of no expression of opinion or communication of information involved in topless dancing. The Court recognizes the recent decision of Schacht v. United States, 398 U.S. 58, 90 S.Ct. 1555, 26 L.Ed.2d 44 [1970], which recognized that an anti-war theatrical presentation was within the protection of the First Amendment. There, once again, the conduct involved the expression of an opinion upon a topic of vital public concern. The statute attacked aimed directly at the expression involved. The *Schacht* case is distinguishable, as is *Tinker, supra,* for those reasons.

In United States v. O'Brien, 391 U.S. 367, 376, 88 S.Ct. 1673, 1678, 20 L.Ed.2d 672, 679 [1968], the Court stated that it could not

accept the view that an apparently limitless variety of conduct can be labeled "speech" whenever the person engaging in the conduct intends to express an idea.

The Court went on to *assume,* for the purposes of the remainder of the decision, that O'Brien's burning of his draft card contained sufficient communicative

elements of expression to bring it within the protection of the First Amendment. The present case is peculiarly devoid of communicative elements and this Court is not willing to expand the definition of speech far beyond that evidenced in the decisions heretofore rendered by the United States Supreme Court. The warning against such expansion amply manifested itself in the above-quoted language of the *O'Brien* case.

But, even should this Court assume, as was done in *O'Brien,* that there was sufficient elements of expression within the conduct of topless dancing, the application of the stringent First Amendment test enunciated in *O'Brien* would not be applicable.

In the 1966 decision of Ginzburg v. United States, 383 U.S. 463, 474, 86 S. Ct. 942, 949, 16 L.Ed.2d 31, 40 the United States Supreme Court majority, writing through Mr. Justice Brennan, stated "that commercial activity, in itself, is no justification for narrowing the protection of expression secured by the First Amendment."

In 1942, the decision of Valentine v. Chrestensen, 316 U.S. 52, 62 S.Ct. 920, 86 L.Ed. 1262, held as follows:

This court has unequivocally held that the streets are proper places for the exercise of the freedom of communicating information and disseminating opinion and that, though the states and municipalities may appropriately regulate the privilege in the public interest, they may not unduly burden or proscribe its employment in these public thoroughfares. We are equally clear that the Constitution imposes no such restraint on government as respects *purely commercial* advertising. (Emphasis added)

At first blush, *Chrestensen* appears to have fallen by the wayside, considering the language of *Ginzburg.* But that impression is defective, largely based upon the confusion of two separate concepts which strike the mind as being the same thing.

The theory disclosed in *Ginzburg, supra,* has its genesis in cases such as New York Times Co. v. Sullivan, 376 U. S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 [1964]. The *Times* case is, of course, the sire of a now broadly-expanded doctrine relating to the law of defamation and its collision with the First Amendment, but it clearly delineates the distinction between the "commerical activity" theory of cases such as *Ginzburg* and the "purely commercial advertisement" theory derived from *Chrestensen.*

In the *Times* case, the protection of the First Amendment asserted by the newspaper was disputed by Mr. Sullivan on the grounds that the allegedly defamatory material of a social protest and political nature appeared in a paid advertisement rather than in the news or editorial sections of the paper. Sullivan asserted that the rule of *Chrestensen* applied; that since this was a paid advertisement it was a "commercial" advertisement and, thus, not subject to the stringent protections of the First Amendment. The Court in the *Times* case rejected this argument, saying,

The publication here was not a "commercial" advertisement in the sense in which the word was used in *Chrestensen.* It communicated information, expressed opinion, recited grievances, protested claimed abuses, and sought financial support on behalf of a movement whose existence and objectives are matters of the highest public interest and concern. 376 U.S. at 266, 84 S.Ct. at 718.

The opinion noted that in *Chrestensen* "the Court held that a city ordinance forbidding street distribution of commercial and business advertising matter did not abridge the First Amendment freedoms * * *" 376 U.S. at 265, 84 S.Ct. at 718, and that "its holding was based upon the factual conclusions that the handbill was 'purely commercial advertising' * * *." 376 U.S. at 266, 84 S.Ct. at 718.

The confines of the *Chrestensen* doctrine were delineated in 1943 in Martin

v. Struthers, 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313. This case involved a municipal ordinance which prohibited the distribution of *any* handbills or circulars door-to-door. The Court held the ordinance, as applied to a person distributing religious material, violative of the First Amendment. However, shortly after leaving the first page of that opinion, at footnote number one, the author, Mr. Justice Black, notes: "This ordinance was not directed solely at commercial advertising."

■ From these and other opinions of the Supreme Court, the following guidelines have evolved. If the activity classified as speech is conducted to communicate information or disseminate opinion, it is offered the fullest protection of the First Amendment. It makes no difference whether that communication is via paid advertisement, New York Times Co. v. Sullivan, *supra*; the commercial sale of books, Smith v. California, 361 U.S. 147, 80 S.Ct. 215, 4 L. Ed.2d 205 [1959]; or a cost-free handbill, Talley v. California, 362 U.S. 60, 80 S.Ct. 536, 4 L.Ed.2d 559 [1960]. The distinction as to what separates "purely commercial advertisement" from this type of case is that, in the former, the expression is used, not to disseminate opinion or communicate information, but to sell a product or service. In the instance now before the Court, dancing could probably be classified as "purely commercial advertisement." As the handbill in *Chrestensen* was used to promote a product, so is the dancing here used to promote a product—the sale of alcoholic beverages. It is not aimed in any sense at the dissemination of opinion or communication of information. It is not within the purview of the traditional First Amendment cases. The test which would be applied, if expression was held to be involved here, would be the restricted test of Valentine v. Chrestensen, *supra. See* Banzhaf v. F. C. C., 132 U.S.App.D.C. 14, 405 F.2d 1082, 1101–1101 [1968], cert. denied, American Broadcasting Companies v.

F. C. C., 396 U.S. 842, 90 S.Ct. 50, 24 L. Ed.2d 93; Associates & Aldrich Co. v. Times Mirror Co., 440 F.2d 133, 136 [9th Cir. 1971]; Richards v. Thurston, 424 F.2d 1281, 1282 [1st Cir. 1970]; George R. Whitten, Jr., Inc. v. Paddock Pool Builders, Inc., 424 F.2d 25, 33 [1st Cir. 1970], cert. denied, 400 U.S. 850, 91 S.Ct. 54, 27 L.Ed.2d 88 [1971]; Jackson v. Dorrier, 424 F.2d 213, 217 [6th Cir. 1970], cert. denied, 400 U.S. 850, 91 S. Ct. 55, 27 L.Ed.2d 88 [1971].

## DUE PROCESS

■ Plaintiffs allege that the Ordinance results in a taking of property without due process of law. The discussion of the "due process" considerations and those of equal protection and impairment of the obligation of contract will be considered here in a determination of the validity of this Ordinance under the police power of the City. The Court initially notes that the concept of "substantive due process", wherein the courts would substitute their judgment as to the desirability of a given law for that of the legislative body, has passed away and lies buried in the 1930's.

The question of "reasonableness" is dispositive of the due process and other attacks discussed above. This Ordinance is based upon an exercise of the State police power by the City.

The State controls liquor traffic within its boundaries in the exercise of the police power. Village of Brooten v. Cudahy Packing Co., 291 F.2d 284 [8th Cir. 1961].

The Ordinance now before the Court constitutes a legislative determination that the exposure of certain portions of the female anatomy, notably the nipple areas of the female breast and the pubic area or buttocks of either sex, is morally and socially undersirable when conducted in conjunction with the sale and consumption of alcoholic beverages. The Court finds such determination is within the power of the legislative body and is not unreasonable or arbitrary.

## VAGUENESS

Presumably plaintiffs object to the second paragraph of the amendment since the Court can conceive of no vagueness existent in the first.

There is some question whether the precise legal question of "vagueness" is applicable outside the realm of criminal or penal statutes or whether "over-breadth" is applicable except where the First Amendment is found to apply, Dandridge v. Williams, 397 U.S. 471, 484–485, 90 S.Ct. 1153, 25 L.Ed.2d 491 [1970]; but interpreting the allegation to mean that the ordinance does not adequately apprise the plaintiffs and others as to what conduct is proscribed, the ordinance is not unclear nor is it overextensive.

The second paragraph of the ordinance reads as follows:

> For the purposes of this subsection, the term "nudity" shall mean the showing of the human male or female genitals, pubic area or buttocks or the human female breast including the nipple or any portion below the nipple with less than a full opaque covering.

The only possible objection here might be that the term "any portion below the nipple" might be taken to mean a female must be completely covered below the breast to her feet. This is a strained reading and when the Ordinance as a whole is considered it is clear that the language quoted refers to that portion of the breast below the nipple and not the body below the breast.

## CONCLUSION

Thus, the Court has determined that the temporary restraining order was properly dissolved as improvidently granted and plaintiffs' complaint dismissed, due to the fact that this Court lacks subject-matter jurisdiction because of the failure of the complaint to assert any substantial federal constitutional question.

An Order dismissing this action will be entered contemporaneously with this Memorandum.