Major Liquors, Inc., doing business as Silver Tap, et al., appellees, Impleaded with Caesar's Palace, Inc., appellant, v. City of Omaha, Nebraska, a municipal corporation, et al., appellees.

198 N. W. 2d 483

Filed June 16, 1972. No. 38330.

Stern, Harris, Feldman, Becker & Thompson, for appellant.

Herbert M. Fitle, Frederick A. Brown, Edward M. Stein, Gary Bucchino, and Roger Stanway, for appellees City of Omaha et al.

Walter J. Matejka, for appellee Major Liquors, Inc.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

NEWTON, J.

In this action the sole plaintiff to appeal challenges the constitutionality of an ordinance of the city of Omaha which provides for the revocation of a liquor license if topless dancing by a female is permitted on the licensed premises. It is asserted that the ordinance conflicts with the First Amendment to the Constitution of the United States which guarantees freedom of speech and with the provisions of the Fourteenth Amendment for equal protection of the laws. We affirm the judgment of the district court holding the ordinance is valid.

Plaintiff contends that "freedom of speech" as guaranteed by the First Amendment includes the right to express thoughts and ideas by means other than speech. Cited in support of this view is Burstyn, Inc. v. Wilson, 343 U. S. 495, 72 S. Ct. 777, 96 L. Ed. 1098, holding that motion pictures are protected as they are a significant medium for the expression of ideas; In re Giannini, 69 Cal. 2d 563, 72 Cal. Rptr. 655, 446 P. 2d 535, cert. den., 395 U. S. 910, which held that topless dancing could not be banned under an ordinance prohibiting "lewd or dissolute conduct"; Glancy v. County of Sacramento, 17 Cal. App. 3d 504, 94 Cal. Rptr. 864, holding an ordinance banning topless dancing without reference to obscenity was overbroad and unconstitutional; and Hudson v. United States (D. C. App.), 234 A. 2d 903, sanctioning a burlesque dance in the absence of proof of obscenity. The Giannini and Hudson decisions

are based upon the premise that obscenity was not present or satisfactorily proved.

In support of the "equal protection" argument under the Fourteenth Amendment, plaintiff asserts, in substance, that persons engaged in an industry handling intoxicating liquors cannot be classified and dealt with differently from people engaged in other callings. The only case cited which is directly in point, in that it deals with the liquor industry, is La Rue v. State of California, 326 F. Supp. 348. This case held that an ordinance prohibiting live entertainers from engaging in certain "sexual conduct" without regard to the question of obscenity was unconstitutional. Portions of the ordinance prohibiting nude or seminude entertainers were voided.

Defendants rely upon three theories to sustain the ordinance. First, that the liquor industry is subject to strict regulation under constitutionally delegated police powers; second, that public dancing by topless female entertainers is "conduct" not speech or expression; and third, that "speech" elements involved are merely incidental to conduct or activity.

In earlier years saloons, barrooms, and taverns dispensing alcoholic liquors were largely unregulated. This gave rise to numerous abuses. Public disgust and denunciation gradually brought about a steady growth of restrictive controls and culminated in a constitutional amendment imposing absolute prohibition. With the repeal of the national prohibition act, the question of "wet or dry" was again left up to the individual states. One by one the states have again authorized the manufacture, distribution, and sale of alcoholic liquors but in so doing have, without exception, made use of the police powers to impose strict controls on the industry.

The following excerpts from 45 Am. Jur. 2d, Intoxicating Liquors, § 23, p. 502, and § 24, p. 503, are indicative of the general police power: "The power of a state to absolutely prohibit the sale of intoxicating liquor

includes the power to permit the sale thereof under definitely prescribed conditions, and such business or traffic may be permitted only under such conditions as will limit to the utmost its evils. * * *

"A state, in the exercise of its undoubted power to protect its people against the evils incident to traffic in and the use of intoxicants, may exercise large discretion as to the means employed. The form or method of regulation and control is one of public policy for the decision of each state, and frequently the prevailing view is reflected by appropriate legislative enactments. * * *

"The state has far broader power and greater latitude to regulate and restrict the use, distribution, or consumption of liquor than to regulate or restrict ordinary business, because of the effect of the former on the health and welfare of the public. The scope and extent of such regulations depend solely upon the judgment of the lawmakers, with the wisdom of which the judiciary has no concern, provided, always, that they do not transcend the limits of state authority by invading rights which are secured by the Constitution of the United States, and provided further that the regulations adopted do not operate a discrimination against the rights of residents or citizens of other states." See, also, § 285, p. 682, wherein it is stated: "Regulations, both municipal and statutory, may properly prohibit the use of attractions or other amusements which may make places where intoxicating liquors are sold attractive to the loiterer. It is not a question, under such regulations, of whether the amusements are of such character as to annoy or disturb persons living nearby or doing business in the vicinity, but whether the prohibited acts will tend to attract or entice people into the place where the liquors are sold."

These general propositions are recognized in federal as well as state law. Ziffrin, Inc. v. Reeves, 308 U. S. 132, 60 S. Ct. 163, 84 L. Ed. 128, recognizes the right of

a state to absolutely prohibit the manufacture, transportation, sale, or possession of intoxicating liquors and holds: A state's power absolutely to prohibit the manufacture, sale, transportation or possession of intoxicants includes the lesser power to permit these things only under definitely prescribed conditions.

A state may protect its people against evil incident to intoxicants; and may exercise large discretion as to means employed. See, also, In re Tahiti Bar, Inc., 395 Pa. 355, 150 A. 2d 112.

In Joseph E. Seagram & Sons, Inc. v. Hostetter, 384 U. S. 35, 86 S. Ct. 1254, 16 L. Ed. 2d 336, in approving, as within the police power, certain state price regulations, the court held: It is not the province of courts to draw on their own views as to the morality, legitimacy, and usefulness of a particular business in order to decide whether a statute bears too heavily upon that business and by so doing violates due process.

Under the system of government created by the Federal Constitution it is up to legislatures, not courts, to decide on the wisdom and utility of legislation.

Due process does not authorize courts to hold laws unconstitutional when they believe the legislature has acted unwisely.

Courts do not substitute their social and economic beliefs for the judgment of legislative bodies.

Were constitutionally proscribed acts interfering with personal privileges and liberties literally interpreted, in regard to many subjects, we could have no laws whatsoever. Every law affects and restricts individual rights in some manner and to a greater or lesser degree. They all regulate human conduct and interests in one form or another. For this reason rules of necessity and reasonableness are used in determining the validity of many acts legislatively proscribed. "A police regulation, obviously intended as such, and not operating unreasonably beyond the occasions of its enactment, is not invalid because it may affect incidentally the exer-

cise of some right guaranteed by the constitution." In re Anderson, 69 Neb. 686, 96 N. W. 149.

"Persons, and their rights of liberty and property, are subject to restraints and burdens which legislature imposes upon them for common good, and, although exercise of a police power may inconvenience an individual or group and may curtail the use, or depreciate the value of property, if the measure reasonably tends to accomplish the purpose of its enactment without unreasonably or arbitrarily exceeding the needs of the occasion, it is a valid exercise of the police power." State v. Sullivan, 245 Minn. 103, 71 N. W. 2d 895. See, also, Nelsen v. Tilley, 137 Neb. 327, 289 N. W. 388, 126 A. L. R. 729; Central Markets West, Inc. v. State, 186 Neb. 79, 180 N. W. 2d 880.

Other jurisdictions have divided on the question of whether or not topless dancing by females may be prohibited in places dispensing alcoholic liquors. It has been held that in the absence of obscenity such dancing cannot be prohibited as it is in violation of First Amendment rights. See, In re Giannini, 69 Cal. 2d 563, 72 Cal. Rptr. 655, 446 P. 2d 535, cert. den., 395 U. S. 910; La Rue v. State of California, 326 F. Supp. 348.

In Paterson T. & G. Owners Assn. v. Borough of Hawthorne, 108 N. J. Super. 433, 261 A. 2d 677, it was held that a "Community has right to ban from premises of alcoholic beverage licensees the 'topless' and 'bottomless' entertainer or dancer." See, also, Philadelphia Retail L. D. Assn. v. Pennsylvania Liquor Control Board, 360 Pa. 269, 62 A. 2d 53; Adams Newark Theatre Co. v. City of Newark, 22 N. J. 472, 126 A. 2d 340; Hodges v. Fitle, 332 F. Supp. 504.

Is the restriction against females dancing when "topless" or seminude an unreasonable regulation of businesses engaged in dispensing alcoholic liquors? We conclude that it is not. The prime objection of plaintiffs to the ordinance, as appears from their pleading and evidentiary exhibits, is that the banning of such

entertainment reduces their patronage and adversely affects their income. This confesses that the object of this type of entertainment is to lure customers and induce them to indulge in the consumption of alcoholic liquors. The consumption of alcoholic liquors is a practice which although legalized, has never been encouraged in American society. If the use of harmful drugs were to be legalized, should we encourage their use? The attendant evils of intoxication, alcoholism, and highway mayhem are well known and understood. One who consumes alcoholic liquors necessarily succumbs to their influence for the time being. He is more susceptible to ideas and emotions generated by the environment and much more likely to accept what transpires in a lewd or obscene manner than if he viewed the same degree of nudity in an art gallery or witnessed the same activities on the legitimate stage. The basic appeal of this type of entertainment in bars is the titillation of erotic instincts. It is that expectation which attracts the clientele. Such an appeal may well vary in its effects on different individuals as well as with the degree of intoxication, but the police power is intended for the protection of all individuals and the fact that some may not need such protection is irrelevant.

The theory that the ordinance violates the constitutional guarantee of freedom of speech is based upon the ground that dancing, like speech or other activities, may be a "medium of expression." In other words, it may be what is known as "interpretative dancing." The cases above cited which sanction topless dancing are based on this premise and draw the line only at obscene performances. This line of demarcation is now, for all practical purposes, nonexistent. Under terms defined by the federal courts the word "obscene" is now obsolete and without meaning. That definition as set out in La Rue v. State of California, 326 F. Supp. 348, is as follows: " 'Under this definition (of obscenity), as elaborated in subsequent cases, three elements

must coalesce: it must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value.'" There are few, if any, moves or acts performed by human beings which are not made for some purpose, and which, when simulated, may not be deemed expressive. This being true, adherence to the foregoing definition of obscenity would permit the public performance of almost any type of simulated human behavior.

We do not believe that the line separating the licit from the illicit need be so finely drawn. There is a difference between "conduct" and "speech." In United States v. O'Brien, 391 U. S. 367, 88 S. Ct. 1673, 20 L. Ed. 2d 672, it is held: "We cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea. However, even on the assumption that the alleged communicative element in O'Brien's conduct is sufficient to bring into play the First Amendment, it does not necessarily follow that the destruction of a registration certificate is constitutionally protected activity. This Court has held that when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms."

In City of Portland v. Derrington, 253 Ore. 289, 451 P. 2d 111, cert. den., 396 U. S. 901, 90 S. Ct. 212, 24 L. Ed. 2d 177, it is stated: "When nudity is employed as sales promotion in bars and restaurants, nudity is conduct. As conduct, the nudity of employes is as fit a subject for governmental regulation as is the licensing

of the liquor dispensaries and the fixing of their closing hours. * * *

"Whether or not we agree with the wisdom of the city council's attempt to legislate morals, the question is not one of legislative wisdom, but one of constitutional power. The chief aim of the ordinance is to regulate conduct deemed by the lawmakers to be injurious to health, safety, and morals. The city's legislative judgment in the matter should be upheld unless the statute unreasonably impinges upon those elements of communication which may be incidental to the regulated conduct. We do not believe the interference with communication in the case at bar has enough substance to present a First Amendment question. The error in the court below was in treating the problem as one of free speech and nothing more."

In Hoffman v. Carson (Fla.), 250 So. 2d 891, involving a nude go-go dancer, it is said: "Appellant loses sight of the distinction between speech and conduct. The statute is not directed at First Amendment rights of free expression, nor does it concern itself with obscenity * * *. Rather, it is directed at the exposure of sexual organs and nudity, a matter of conduct thought to be a crime under the common law * * *, and generally considered as having a reasonable relationship to the public welfare, and, therefore, within the police power of the Legislature. * * *

"We find that appellant's performance falls short of presenting a 'speech' issue sufficiently important to outweigh the State's interest in curtailing lascivious exposure in public places. Contributing to this conclusion is the fact that appellant admits that she usually was tipped a certain amount for removing her brassiere and was tipped an additional substantial sum for removing her pants. The trial judge found that: 'Apparently the spontaneity of her "self-expression" was in direct proportion to the monetary consideration she received from the barflies rather than from her ab-

sorption in the artistry of her dance.' "

Is the baring of breasts essential to the expressions intended to be conveyed by the female dancers? Three dancers testified. One was silent on this subject; one conceded that it was not; and the third thought it necessary but conceded the same results could be attained if she were completely covered by a leotard. For a great many years various forms of dancing of an interpretative or expressive nature have been popularly recognized. Perhaps the best known and most highly skilled and regarded as a form of art is the ballet. Although practitioners of the highest form of interpretative or expressive dancing, ballet dancers have not found nudity in any degree to be essential to their performance. The story to be told is expressed without resort to nudity. This being true, it would seem that lesser forms of the art of dancing should not find it necessary or essential to resort to varying degrees of nudity as a medium of expression. These factors, in a case such as we have before us, serve to point up the distinction between conduct and speech.

Whether or not a question of free speech is inherent in the situation presented when the speech elements of an activity are merely incidental to the activity, then the activity in its entirety is not by virtue of its speech elements entitled to the protection of the First Amendment. See Paladino v. City of Omaha, 335 F. Supp. 897.

The argument that the ordinance violates the equal protection clause of the Fourteenth Amendment is not strenuously urged. A legislative body has power to make reasonable classifications for purposes of legislation. See State ex rel. Sorensen v. First State Bank, 122 Neb. 109, 239 N. W. 646.

"The right to engage in the sale of intoxicating liquors involves a mere privilege; and restrictive regulations or a suppression of the traffic do not violate provisions of the state and federal Constitutions relating to due process, privileges or immunities, uniformity, nor, un-

less wholly arbitrary in their discrimination between persons, the equal protection of the law." Safeway Stores, Inc. v. Nebraska Liquor Control Commission, 179 Neb. 817, 140 N. W. 2d 668. See, also, Marsh & Marsh, Inc. v. Carmichael, 136 Neb. 797, 287 N. W. 616.

The judgment of the district court is affirmed.

AFFIRMED.

McCOWN, J., dissenting.

The rationale of the majority opinion, carried to its obvious conclusion, would authorize the City to ban any or all types of entertainment which intended to induce customers to patronize an establishment which sold alcoholic liquors. Any form of entertainment could be banned, paintings and decor could be banned or strictly regulated, and even the playing of music might be prohibited. On the reasoning of the majority opinion, anything which contributes to the enticement of customers into a drinking establishment may be restricted or banned because the sale of alcoholic liquor is subject to strict regulation by the government. The exercise of the police power, however, is not so unlimited. Neither does the fact that the liquor business may be entirely prohibited authorize the State to legalize the business and then "regulate" it by arbitrary fiat without legally justifiable reason. Under any circumstances and at all times even though the liquor industry is subject to strict regulation, the exercise of the governmental power must be in the form of actions which are within the constitutional authorization, are not unreasonable or arbitrary, and are reasonably related to the attainment of a permissible objective. See Central Markets West, Inc. v. State, 186 Neb. 79, 180 N. W. 2d 880.

The basis upon which the majority opinion avoids First Amendment problems is the conclusion that nudity or partially nude dancing presented as entertainment does not involve speech or expression but is only conduct. This holding stems from City of Portland v. Derrington, 253 Ore. 289, 451 P. 2d 111. It should be noted

first that the Oregon Court's conclusion in that case was directed at "the performances and costumes of female *attendants* in bars and taverns." (Emphasis ours.)

The evidence in the case before us shows that the topless female dancers involved in this case were strictly entertainers and did not participate in any way in the selling, dispensing, or serving of alcoholic liquors. It is difficult to separate "conduct" and "speech" or "expression." It is also apparent that elements of "expression" involved in nude or semi-nude attire on the part of employees primarily engaged in their duties of selling and serving alcoholic liquors are minimal contrasted with their "conduct" as attendants. As to such employees, Derrington may well be applicable. This is not true of a dancer who is hired as an entertainer, and that is the case before us. It is obvious, of course, that nudity is "conduct" and subject to regulation. Nevertheless, "dancing" is "expression" and unless it is shown that the dancing is obscene, it is protected by the First Amendment. As Justice O'Connell said in his dissent in the Derrington case: "* * * the city cannot inhibit defendant's right simply because it decides that her nudity may have an adverse moral effect on the community or that it might cause disturbances in the restaurant. Even if dancing were held to be entitled to less protection than some other forms of expression, certainly it cannot be prohibited merely because a part of the public, even a majority, regards non-obscene nude dancing as unacceptable. See Kingsley International Pictures Corp. v. Regents, 360 U S 684, 79 S Ct 1362, 3 L Ed 2d 1512."

Asserted conflict between First Amendment rights and the state police power calls for careful analysis rather than a broad brush treatment. The majority opinion tacitly concedes that the "conduct" involved here does not meet any current tests of obscenity but still refers to "a lewd or obscene manner" and "the titillation of erotic instincts." If the City of Omaha were

actually concerned with preventing the luring of customers into drinking establishments, it is strange that this ordinance is the only one dealing with the subject. Even this one ordinance prohibits only *live* nude entertainment. (Emphasis ours.) It is quite evident that the concern of the City here was not the protection of the citizenry from the evils of alcohol, but, instead, the prohibition of a certain form of entertainment determined to be morally unacceptable by the City, without observing First Amendment constitutional standards established by the Supreme Court. Because many, or even most, citizens find such performances unpalatable or debasing does not mean they lack an expressive element. Even if the dance be regarded as a lower form of expression, it is still expression and merits First Amendment protection, even though it be in the form of entertainment in a commercialized setting. See, Schacht v. United States, 398 U. S. 58, 90 S. Ct. 1555, 26 L. Ed. 2d 44; Jacobellis v. Ohio, 378 U. S. 184, 84 S. Ct. 1676, 12 L. Ed. 2d 793; Stanley v. Georgia, 394 U. S. 557, 89 S. Ct. 1243, 22 L. Ed. 2d 452; Redrup v. New York, 386 U. S. 767, 87 S. Ct. 1414, 18 L. Ed. 2d 515.

BOSLAUGH, J., dissenting in part.

I join in that part of Judge McCown's opinion that holds regulation of the liquor industry must be reasonably related to the attainment of a permissible objective and not arbitrary.